OPINION OF THE COURT
 

 Levine, J.
 

 This contract dispute is between plaintiff, a national provi
 
 *433
 
 der of personal and group health insurance as well as life insurance, and defendant who, at the time of contract formation was engaged in the development and marketing of a computer software program known as the Automated Claims Entry System (ACES), especially designed for processing health insurance claims for the health insurance industry. The basic ACES system was commonly sold with customized enhancements to tailor it to the special needs of the particular contract vendee.
 

 In November 1984 plaintiff and defendant entered into such an agreement. The contract provided for the licensing of the ACES base system software for $160,000, plus some $44,000 for the preparation of functional specifications to adapt the ACES system to plaintiff’s particular needs. The Agreement required defendant to furnish the customized enhancements provided by the specifications, at a cost not to exceed some $390,000, based upon invoiced expenditures of time and materials.
 

 The Agreement contained a broad limitation of liability clause. Section 7 provided that "[i]n no event shall [plaintiff] be liable for any lost profits, lost savings or other consequential damages, even if [plaintiff] has been advised of the possibility of or could have foreseen such damages”. Defendant was similarly absolved from liability for "loss of profit, loss of business, or other financial loss * * * resulting from * * * [defendant’s] performance or non-performance” but an exception to this limitation was provided "for
 
 intentional misrepresentations,
 
 or damages arising out of [defendant’s]
 
 willful acts or gross negligence”
 
 (emphasis supplied).
 

 By December 1985, defendant had furnished the base system and functional specifications without dispute for an aggregate compensation of $204,000. Two sets of enhancements were offered by defendant, but were rejected by plaintiff. It was at this point, according to plaintiff’s proof, that defendant demanded an upward adjustment of the contract ceiling for enhancements, failing which it announced it would withdraw from the project. When plaintiff refused defendant’s demand, defendant discontinued further performance.
 

 Plaintiff then commenced this action, seeking a refund of the sums it paid defendant plus general and consequential damages. Defendant interposed the limitation on liability contained in section 7 of the parties’ Agreement as a partial
 
 *434
 
 affirmative defense. A lengthy trial ensued. The trial court instructed the jury that plaintiffs damages were limited to a refund of the moneys paid to defendant, unless the jury found that defendant’s conduct constituted "willful acts”. In defining a willful act for the jury, the court, over plaintiffs objection, excluded merely deliberate or intentional nonperformance. Rather, the jury was instructed that defendant’s commission of a willful act required a finding that its conduct was malicious, i.e., the intentional perpetration of a wrongful act injuring plaintiff without justification.
 

 The jury made a special finding that defendant’s acts were willful and awarded plaintiff $3,961,000 in damages, including $581,000 cover damages
 
 (see,
 
 UCC 2-712) and $2,807,000 in lost savings.
 

 The Trial Judge denied a defense motion for judgment notwithstanding the verdict. It held that there was evidence upon which the jury could reasonably find defendant’s acts willful, namely, (1) defendant had no excuse or justification for demanding an increase in compensation in excess of the contract’s maximum price; (2) defendant was aware that if it withdrew from the project before completion, plaintiff would have "to start from scratch and find an entirely new system”; and (3) defendant’s refusal to perform was "motivated by its desire to eliminate contractual obligations it perceived to be an obstacle to any sale of its computer division to a company known as Erisco”.
 

 On appeal, the Appellate Division modified on the law, reducing damages to the $204,000 plaintiff paid defendant for its partial performance, plus interest, costs and disbursements (192 AD2d 83). The Court interpreted the willful act exception to the limitation of liability provision in the contract as requiring acts constituting the commission of a tort. It found, as a matter of law, that the proof did not establish any such tortious conduct, but merely an intentional abandonment which was held insufficient to invoke the exception. In part, the Appellate Division concluded that intentional abandonment alone could not constitute the willful acts referred to in the parties’ contract because " '[w]illfuP is a term of tort, not contract”
 
 (id.,
 
 at 90), and for this reason, tort law concepts of willful acts necessarily applied. This Court granted plaintiff permission to appeal from the Appellate Division’s ruling.
 

 Plaintiffs primary argument for reversal is that the Appellate Division erred in refusing to attribute the common, ordinary meaning of willful acts as merely deliberate or
 
 *435
 
 intentional conduct, and, citing to various decisions of this Court, plaintiff contends that stare decisis mandates adoption of that meaning. Thus, according to plaintiff, since defendant’s breach was intentional rather than inadvertent, the clause limiting its liability for consequential damages should not apply. We disagree. The issue here is not how we and other courts have construed "willful” in other contexts, such as in interpreting statutes using that term or in formulating or applying legal principles in tort or contract law. Rather, the issue is what the parties intended by "willful acts” as an exception to their contractual provision limiting defendant’s liability for consequential damages arising from its "non-performance under this agreement”. Thus, to the extent that the Appellate Division opinion holds that tort law principles apply in all cases in which the word willful is at issue or thereby limits the legal meaning of the word, we do not agree. However, because the law of contracts as pertinent and applied to this contractual dispute leads us to the same result, we now affirm.
 

 Several factors strongly weigh against narrowly applying the limitation on defendant’s liability to inadvertent malperformance or nonperformance, as plaintiff’s interpretation of the willful acts exception to the limitation of liability provision would dictate.
 

 Generally in the law of contract damages, as contrasted with damages in tort, whether the breaching party deliberately rather than inadvertently failed to perform contractual obligations should not affect the measure of damages. As was stated by then-Justice Bergan in
 
 Briefstein v Rotondo Constr. Co.
 
 (8 AD2d 349):
 

 "An intention not to perform
 
 [a contract]
 
 does not bring on heavier damages than actual nonperformance.
 
 The policy which runs through the fabric of the law of contracts is to bind a party by what he agrees to do whether or not he intends to do what he agrees”
 
 (id.,
 
 at 351 [emphasis supplied];
 
 see also, Globe Ref. Co. v Landa Cotton Oil Co.,
 
 190 US 540, 544 [Holmes, J.]; 5A Corbin, Contracts § 1123; 3 Farnsworth, Contracts § 12.17a [2d ed]).
 

 Plaintiff has not advanced any reason why the parties would have drawn such a distinction between inadvertent and intentional nonperformance with respect to the damages limitation clause in their Agreement.
 

 
 *436
 
 A limitation on liability provision in a contract represents the parties’ Agreement on the allocation of the risk of economic loss in the event that the contemplated transaction is not fully executed, which the courts should honor. Thus, Professor Corbin states:
 

 "[W]ith certain exceptions, the courts see no harm in express agreements limiting the damages to be recovered for breach of contract!
 
 *
 
 1 Public policy may forbid the enforcement of penalties against a defendant; but it does not forbid the enforcement of a limitation in his favor. Parties sometimes make agreements and expressly provide that they shall not be enforceable at all, by any remedy legal or equitable. They may later regret their assumption of the risks of non-performance in this manner; but the courts let them lie on the bed they made. Where a contract provides that damages for breach shall not be recoverable beyond a specified sum, it is obvious that the risk of loss beyond that sum is being assumed by the promisee. If the law allows him to assume the whole risk, with no remedy whatever, it is obvious that it will allow him to assume a part less than the whole.” (5 Corbin, Contracts, § 1068, at 386;
 
 see also, Patrick Petroleum Corp. v Callón Petroleum Co.,
 
 531 F2d 1312, 1315-1318.)
 

 Repeatedly throughout their Agreement here, the parties agreed to shift to plaintiff the risk of a substantial portion of any economic loss caused by defendant’s nonperformance by excluding plaintiff’s right of recovery of consequential damages such as those it now claims. Thus, section 10 of the Agreement provided that in the event that the ACES system failed to perform in accordance with the specifications within the first year after acceptance, plaintiff had the right to "terminate this Agreement and
 
 receive a full refund of all monies paid
 
 hereunder” (Agreement § 10 [b] [i] [emphasis supplied]). The same section likewise limited plaintiff’s remedies in the event that defendant "commits any material breach * * * and fails to remedy such breach within thirty (30) days after written notice” (Agreement § 10 [b] [ii]). Section
 
 *437
 
 1 (k) of the Agreement afforded plaintiff only the same limited remedies upon plaintiff’s determination at any time that the system failed to conform to specifications, and the defective performance or nonperformance was not cured within 30 days after notice. Most significantly for present purposes, the parties agreed that in the event that defendant “shall fail to deliver Enhancements”, that is, the customized modifications in the ACES base system adapting the system to plaintiff’s special needs, the furnishing of which represented the consideration for roughly two thirds of the contract price, plaintiff’s remedy was limited to the right “to terminate [defendant’s] work * * *, complete such work itself and charge the reasonable expenses of such completion of the System against any payments due [defendant], recovering the excess from [defendant], or [plaintiff] may, at its option,
 
 require a full refund
 
 of all monies. The
 
 total charge back
 
 under this paragraph
 
 shall not exceed amounts due and paid to /defendant]”
 
 (Agreement § 12 [6] [emphasis supplied]).
 

 Plaintiff’s construction of the general limitation on liability section, essentially restricting it to inadvertent breaches in the course of defendant’s performance of the contract, clearly is inconsistent with sections 1 (k), 10 and 12 of the Agreement in which plaintiff agreed to limit its remedies for defendant’s nonperformance of the most vital of its obligations under the Agreement, even when such nonperformance persists after notice. Plaintiff’s construction of the willful acts exception to the general limitation on liability section of the Agreement thus violates one of the primary canons of contract construction.
 

 "A cardinal principle governing the construction of contracts is that the entire contract must be considered and, as between possible interpretations of an ambiguous term, that will be chosen which best accords with the sense of the remainder of the contract”
 
 (Rentways, Inc. v O’Neill Milk & Cream Co.,
 
 308 NY 342, 347).
 

 Moreover, plaintiff’s construction of the willful acts exception to defendant’s immunity from consequential damages in section 7 of the Agreement would eliminate any semblance of reciprocity between plaintiff and defendant as to their exposure to liability for heavy consequential damages, in a dispute between the parties over contract performance. Under plaintiff’s narrow interpretation of the protection afforded defen
 
 *438
 
 dont under section 7, defendant would be under inordinate economic pressure to complete performance, being at risk of incurring liability for consequential damages in sums (as here) many times greater than the gross contract price. Under section 7, however, no reciprocal compulsion to complete performance is applied to plaintiff who is granted complete immunity from liability for consequential damages unrestricted by any exception whatsoever. "A court will endeavor to give the [contract] construction most equitable to both parties instead of the construction which will give one of them an unfair and unreasonable advantage over the other”
 
 (Fleischman v Furgueson,
 
 223 NY 235, 241). It is highly unlikely that two sophisticated business entities, each represented by counsel, would have agreed to such a harshly uneven allocation of economic power under the Agreement. "Language in contracts placing one party at the mercy of the other is not favored by the courts”
 
 (Tibbetts Contr. Corp. v O & E Contr. Co.,
 
 15 NY2d 324, 337;
 
 see also, Schoellkopf v Coatsworth,
 
 166 NY 77, 84;
 
 Gillet v Bank of Am.,
 
 160 NY 549, 557-558).
 

 In excepting willful acts from defendant’s general immunity from liability for consequential damages under section 7 of the Agreement, we think the parties intended to narrowly exclude from protection truly culpable, harmful conduct, not merely intentional nonperformance of the Agreement motivated by financial self-interest. Under the interpretation tool of
 
 ejusdem generis
 
 applicable to contracts as well as statutes, the phrase "willful acts” should be interpreted here as referring to conduct similar in nature to the "intentional misrepresentation” and "gross negligence” with which it was joined as exceptions to defendant’s general immunity from liability for consequential damages
 
 (see, Bers v Erie R. R. Co.,
 
 225 NY 543, 546;
 
 Krulewitch v National Importing & Trading Co.,
 
 195 App Div 544, 546). We, therefore, conclude that the term willful acts as used in this contract was intended by the parties to subsume conduct which is tortious in nature, i.e., wrongful conduct in which defendant willfully intends to inflict harm on plaintiff at least in part through the means of breaching the contract between the parties.
 

 As thus defined, limiting defendant’s liability for consequential damages to injuries to plaintiff caused by intentional misrepresentations, willful acts and gross negligence does not offend public policy. As we said in
 
 Sommer v Federal Signal Corp.
 
 (79 NY2d 540) the conduct necessary "to pierce an
 
 *439
 
 agreed-upon limitation of liability in a commercial contract, must 'smack[ ] of intentional
 
 wrongdoing’ ” (id.,
 
 at 554 [quoting
 
 Kalisch-Jarcho, Inc. v City of New York,
 
 58 NY2d 377, 385] [emphasis supplied];
 
 see also,
 
 5 Corbin, Contracts § 1068, at 389 [contractual exemption from liability for
 
 tortious
 
 conduct may be held against the public interest and illegal]; Restatement [Second] of Contracts § 195 [1] ["A term exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy”]).
 

 Finally, we conclude that plaintiffs proof was insufficient as a matter of law to establish that defendant willfully intended to inflict harm on plaintiff through its abandonment of the contract. Apart from evidence of alleged misconduct by defendant during the course of its performance of the contract, totally irrelevant to the subsequent withdrawal from the project, the proof, as plaintiff has indeed stressed, was that defendant’s repudiation of the Agreement was motivated exclusively by its own economic self-interest in divesting itself of a highly unprofitable business undertaking in order to promote the sale of its computer software division to a competitor company. Consequential damages resulting from that kind of contract nonperformance constitute a risk which plaintiff assumed under section 7 of the parties’ Agreement.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith and Ciparick concur.
 

 Order affirmed, with costs.
 

 *
 

 The exceptions Professor Corbin notes are contracts of adhesion (5 Corbin, Contracts § 1068, at 386, n 84.5), or when the breach is also tortious
 
 (id.,
 
 at 389).