

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-30-2002

# Silver Leaf v. Tasty Fries

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-2767

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Silver Leaf v. Tasty Fries" (2002). *2002 Decisions.* Paper 681.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/681

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 02-2767

———————

SILVER LEAF, LLC,

<u>Appellant</u>

v.

TASTY FRIES, INC.

———————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 02-cv-02342)
District Judge: Hon. John W. Bissell, Chief Judge

———————

Argued September 24, 2002

Before: BARRY, AMBRO and COWEN, <u>Circuit Judges</u>

(Filed  October 30, 2002)

Gregory B. Reilly, Esq.
Samuel B. Santo, Jr., Esq.
John Fialcowitz, Esq. (Argued)
Lowenstein Sandler
65 Livingston Avenue
Roseland, NJ 07068

        Counsel for Appellant

Harris L. Pogust, Esq.
Sherman, Silverstein, Kohl, Rose & Podolsky
4300 Haddonfield Road
Suite 311
Pennsauken, NJ 08109

Steven L. Hogan, Esq. (Argued)
Troy L. Martin, Esq.
Lurie, Zepeda,Schmalz & Hogan
9107 Wilshire Boulevard
Suite 800
Beverly Hills, CA 90210

   Counsel for Appellee

---

OPINION

---

COWEN, <u>Circuit Judge</u>

  Plaintiff Silver Leaf, L.L.C. appeals from an order of the District Court denying its

application for a preliminary injunction, in a case concerning a contractual clause limiting

Silver Leaf's right to seek judicial relief to enforce its agreement with the Defendant Tasty

Fries, Inc.  Because we find no legal error in the District Court's interpretation of the

parties' contract, and hence no abuse of discretion in its denial of injunctive relief, we will

affirm.

**I.**

  Tasty Fries developed a patented vending machine that prepares, cooks, and

dispenses french-fries.  On February 1, 2002, Tasty Fries and Silver Leaf signed a "Master

Sales and Marketing Agreement" (the "Agreement") granting Silver Leaf an exclusive

license to sell, market, and distribute these machines.  In return, the Agreement required

Silver Leaf to purchase up to 10,000 machines per year.  Tasty Fries estimated its

manufacturing costs for each machine at approximately $6,500.00.

Section 19.6 of the Agreement contains a "Limitation of Liability" wherein both

parties waived their rights to seek damages for any breach of the Agreement through

lawsuit, arbitration, or any other "formal resolution."  The Agreement provides that Section

19.6 is not applicable to Sections 6.1 (Tasty Fries' indemnification of Silver Leaf for

machine defects), 6.2 (Silver Leaf's indemnification of Tasty Fries for any claim that Silver

Leaf infringes any third party's intellectual property rights), and Article 15 (the terms of

the exclusive license).  The Agreement also states that Section 19.6 is not applicable to

"any unauthorized use of the other party's intellectual property rights,[1]" but limits the

remedy for any use of such rights to injunctive relief.

Article 17 of the Agreement specifies a two-step process for addressing disputes

within the waiver clause of Section 19.6.  Section 17.1 states that both parties must use

"commercially reasonable efforts" to "promptly" resolve any dispute.  If a resolution is not

reached within ten days, the dispute must be submitted to a "Management Committee"

consisting of a senior executive from each company.  Once submitted, the Management

---

[1] Section 11 of the Agreement defines "intellectual property rights" as
> [a]ny and all rights in and with respect to patents, copyrights, Confidential information, know-how, trade secrets, moral rights, contract or licensing rights, confidential and proprietary information protected under contract or otherwise under law, and other similar rights or interests in intellectual property and all registrations an applications for registrations therefor.

Committee is granted an additional ten days to resolve the dispute, after which the matter must be referred to an arbitrator selected by the parties or the American Arbitration Association. However, the arbitration remains subject to the limitation of Section 19.6, precluding an award of damages of any kind. Section 17.3 makes the decision of the arbitrator final, and non-appealable.

On February 22, 2002, the parties executed a "Milestone Schedule" for Silver Leaf's first purchase order in the amount of 10,000 vending machines. Shortly after the Schedule was executed, Silver Leaf allegedly became embroiled in an internal dispute regarding control of the company. On April 1, 2002, Tasty Fries demanded that Silver Leaf provide a letter of credit or equivalent bank financing in the amount of one hundred million dollars as evidence of Silver Leaf's ability to pay for the first 10,000 unit purchase order. Silver Leaf refused, stating that Tasty Fries lacked any authority in the Agreement to insist on additional assurances. In response, on April 11, 2002, Tasty Fries sent Silver Leaf written notice of its intent to terminate the Agreement within thirty days unless Silver Leaf complied with the financing demand. On May 6, 2002, Silver Leaf requested a meeting to discuss the financing guaranty, which Tasty Fries declined in writing the same day. On May 10, 2002, Tasty Fries sent Silver Leaf a notice of termination.

**II.**

On the same day as Tasty Fries' termination, Silver Leaf commenced suit in the Superior Court of the State of New Jersey, and obtained an order to show cause with temporary restraints preventing Tasty Fries from cancelling the contract. The case was

4

removed to the District Court where a hearing on Silver Leaf's application for a preliminary injunction was held on May 31, 2002.

The District Court denied the application for a preliminary injunction finding no likelihood of success on the merits because Silver Leaf had waived its right to sue for damages under Section 19.6 of the Agreement. In so ruling, the District Court found that Silver Leaf's license did not constitute an "intellectual property right" outside the scope of Section 19.6. In addition, the District Court found that Silver Leaf had not shown a threat of irreparable harm, concluding that damages would remedy any breach of the Agreement. Finally, the District Court found that Silver Leaf, as a newly formed entity without any goodwill, could not rely on the loss of its business as a source of irreparable harm.

The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1332. We have jurisdiction to review the denial of an application for a preliminary injunction pursuant to 28 U.S.C. § 1292(a)(1), and on July 15, 2002, granted the Appellant's motion for an expedited appeal.

**III.**

We begin with the well-established framework guiding the issuance of a preliminary injunction. Four factors must be balanced when determining whether a preliminary injunction is warranted: 1) whether the movant has demonstrated a reasonable probability of success on the merits; 2) whether the movant will be irreparably harmed by the denial of injunctive relief; 3) whether the injunctive relief sought will result in greater harm to the non-movant; and 4) whether the injunctive relief sought is in the public interest.

5

Swartzwelder v. McNeilly, 297 F.3d 228, 234 (3d Cir. 2002); Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153, 158 (3d Cir. 1999). We review the District Court's balancing of these factors for an abuse of discretion. Am. Tel. & Tel. Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994). The factual findings of the District Court supporting each factor are evaluated for clear error, and its findings of law are reviewed de novo. Nutrasweet Co. v. Vit-Mar Enters., Inc., 176 F.3d 151, 153 (3d Cir. 1999). In this appeal, Silver Leaf challenges the District Court's conclusions regarding its likelihood of success on its breach of contract claim, and the irreparable harm resulting from Tasty Fries' termination of the Agreement. We discuss each issue separately below.

## A.

We first address Silver Leaf's argument that Section 19.6 is inapplicable to the parties' dispute because Tasty Fries' demand for adequate assurances was asserted in bad faith. Silver Leaf cites three actions by Tasty Fries that it argues constitute bad faith: 1) the demand for an irrevocable letter of credit or similar guaranty;[2] 2) the refusal to meet to discuss the demand for assurances; and 3) press announcements and public filings stating that companies other than Silver Leaf would be responsible for marketing the vending machines. At the time of its application for an injunction, Silver Leaf's complaint did not

---

[2] Although the District Court commented that "it would seem to me to be apparent that defendant made an unreasonable demand," it did not separately rule on the commercial reasonableness of Tasty Fries' request under the New York Uniform Commercial Code, finding that the waiver under Section 19.6 of the Agreement prevented a likelihood of success on the merits.

allege that Tasty Fries breached the Agreement in bad faith.[3]

We have "consistently held" that we will not consider issues that are raised for the first time on appeal. Harris v. City of Philadelphia, 35 F.3d 840, 845 (3d Cir. 1994). This rule is intended to allow both parties a full and fair opportunity to present evidence relevant to the disputed issues, and avoid surprising one side with new arguments. Id. (quoting Hormel v. Helvering, 312 U.S. 552, 556 (1941)). The rule thus "applies with added force where the timely raising of the issue would have permitted the parties to develop a factual record." Id. (quoting In re Am. Biomaterials Corp., 954 F.2d 919, 927-28 (3d Cir. 1992)); see also Bollman Hat Co. v. Root, 112 F.3d 113, 117 n.2 (3d Cir. 1997) (declining to address new contention that a disputed agreement was an unconscionable contract of adhesion).

Nonetheless, we have noted that the rule limiting appellate consideration to issues raised before the District Court "is one of discretion rather than jurisdiction," and that "we have heard issues not raised in the District Court when prompted by exceptional circumstances" or where warranted by "the public interest or justice." Appalachian States Low-Level Radioactive Waste Comm'n v. Pena, 126 F.3d 193, 196 (3d Cir. 1997). However, the cases invoking these exceptions involved matters of strong public policy, social interest, or unsettled circuit law. See, e.g., id. (involving payments for the disposal of low-level radioactive waster under inter-state compacts); Selected Risks Insur. Co. v.

---

[3] An amended complaint raising these new issues was filed in the District Court after the denial of the preliminary injunction, and notice of the instant appeal.

Bruno, 718 F.2d 67, 69-70 (3d Cir. 1983) (involving interpretation of state law that "affects every inhabitant of Pennsylvania and the insurance companies that serve them"); see also Wagner v. Pennwest Farm Credit, 109 F.3d 909 (3d Cir. 1997) (reviewing District Court's allowance of a private right of action in opposition to numerous decisions from other Circuit Courts). More commonly, therefore, we have found no cause to exercise our discretion to address claims not raised before the District Court. See, e.g., Walton v. Mental Health Ass'n of Southeastern Penn., 168 F.3d 661, 670 n.9 (3d Cir. 1999); Cont'l Cas. Co. v. Dominick D'Andrea, Inc., 150 F.3d 245, 251 (3d Cir. 1998).

In the present case, the facts cited by Silver Leaf to support its bad faith claim—the requested letter of credit, the refusal to meet to discuss the demand, and the public announcements —were all argued during the preliminary injunction hearing. However, Silver Leaf's arguments regarding these factual allegations were directed towards Tasty Fries' breach of the Agreement, not the invalidity of the exculpatory clause. Based on this limitation, the District Court noted that whether the exculpatory clause is contrary to public policy "may or may not be clear at this point," because Silver Leaf "is not attacking [Section] 19.6 as a whole," as "there are no assertions for fraud or overreaching, or any assertion of adhesion . . . ." App. at 17; 47.

Finally, the bad faith exception to the general validity of exculpatory contract clauses under New York law is a matter of some complexity. Relevant authorities hold that the question of bad faith is particularly fact sensitive, essentially requiring a finding that one party's actions have so frustrated reasonable expectations that public policy overrides

8

the express terms of the contract. See Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc., 84 N.Y.2d 430, 436 (1993); Kalisch-Jarcho, Inc. v. City of New York, 58 N.Y.2d 377, 384-85 (1983); Elrac, Inc. v. Giordano, 676 N.Y.S.2d 889, 177 Misc.2d 545, 546 (N.Y. App. Div. 1998). We have held that where intricate legal and factual findings are necessary, and "[p]articularly where important and complex issues of law are presented, a far more detailed exposition of argument is required to preserve an issue." Frank v. Colt Indus., Inc., 910 F.2d 90, 100 (3d Cir. 1990); see also Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 443-44 (3d Cir. 1997).

Accordingly, Silver Leaf's failure to plead bad faith in its original complaint, and failure to argue the exception in support of its injunction application, makes consideration of this fact-sensitive issue on appeal improper.

**B.**

Silver Leaf next argues that the District Court erred in denying its application because Section 19.6 preserves Silver Leaf's right to seek injunctive relief to prevent the unauthorized use of its intellectual property rights. It contends that its exclusive license under Section 8.1 is a "contract or licensing right" within the definition of intellectual property rights in the Agreement. Tasty Fries' termination of the Agreement, and its public representations that a third party would market the machines infringed, Silver Leaf alleges, upon its exclusive license, and hence violated its intellectual property rights.

The interpretation of an unambiguous contract is a question of law to be determined from the language of the parties' agreement. Ark Bryant Corp v. Bryant Park Restoration

9

Corp., 730 N.Y.S.2d 48, 285 A.D.2d 143, 150 (N.Y. App. Div. 2001). The District Court concluded that Silver Leaf's license did not fall within the definition of intellectual property rights in the Agreement. Rather, it determined that the Agreement distinguished between the intellectual property contained in the components, design, and packaging of the vending machine, and the sale or marketing of goods embodying those intellectual rights. We agree.

Section 9.5 of the Agreement states that Silver Leaf "has no claim to any of the Intellectual Property Rights in or to the Machine." Tasty Fries argues that because Silver Leaf holds no claim to "intellectual property rights," its contractual and licensing rights cannot constitute intellectual property. Silver Leaf counters that such a narrow interpretation of Section 9.5 makes the exclusive license granted in Section 8.1 meaningless, leaving Silver Leaf with no remedy for infringement of its sales and marketing rights. Instead, Silver Leaf argues that a "fair reading" of Section 9.5 is that it merely precludes Silver Leaf from claiming the patent rights to the vending machines. Both parties invoke the principle of New York law that a contract should not be interpreted in a manner that renders one part of the agreement ineffectual. Two Guys from Harrison-N.Y., Inc. v. SFR Realty Assoc., 63 N.Y.2d 396, 472 N.E.2d 315, 403 (1984).

We agree with Silver Leaf 's conclusion that "intellectual property rights" in Section 9.5 refer only to Tasty Fries' patents, given that Section 9.5 applies only to the "Intellectual Property Rights in or to the Machine." But that construction does not free Silver Leaf from the terms of Section 19.6, which grants permission to seek injunctive relief only to

10

prevent unauthorized use of "the other party's intellectual property rights." The relevant question remains whether Silver Leaf's license under Section 8.1 is an intellectual property right on its own.

Silver Leaf's sole contention is that Section 8.1 must constitute intellectual property appropriate for injunctive relief, because the purpose of its exclusive license is, by definition, the right to exclude others from practicing within the area of its license. But even if that is true, it does not require us to accept Silver Leaf's conclusion: that Silver Leaf is without a remedy for an infringement of its license unless Section 8.1 is deemed an intellectual property right outside Section 19.6. As noted above, the Agreement provides that Section 19.6 is not applicable to Article 15, the reciprocal exclusivity and non-compete provisions prohibiting Tasty Fries from licensing, selling, or distributing the machines to Silver Leaf's customers. Article 15, therefore, provides Silver Leaf the right to exclude others by virtue of its exclusive license, and the exemption in Section 19.6 permits the issuance of injunctive relief against Tasty Fries during the term of the Agreement and, three years after, for any violation of that right. However, Silver Leaf has not appealed the District Court's determination that Article 15 was not applicable because Silver Leaf submitted no evidence that Tasty Fries has sold any vending machines, or other products, to any third parties.

Accordingly, the District Court did not err in concluding that Silver Leaf's exclusive license is not an intellectual property right within the exception stated in Section 19.6 of the Agreement.

11

## IV.

The District Court correctly determined that the Agreement prohibited the issuance of an injunction to prevent Tasty Fries' termination of Silver Leaf's exclusive license. Therefore, we find no abuse of discretion in the District Court's conclusion that Silver Leaf failed to demonstrate a reasonable probability of success on the merits. As Silver Leaf's failure to establish this first element is alone sufficient to render a preliminary injunction inappropriate, we need not consider the District Court's findings regarding irreparable harm. Nutrasweet, 176 F.3d at 153.

## V.

For the foregoing reasons, the order of the District Court will be affirmed.

/s/ Robert E. Cowen
Circuit Judge