13-2012-cv(L)
My Play City, Inc. v. Conduit Limited

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of October, two thousand fourteen.

PRESENT: DENNIS JACOBS,
         CHRISTOPHER F. DRONEY,
                        Circuit Judges,
         LEWIS A. KAPLAN,[*]
                        District Judge.

- - - - - - - - - - - - - - - - - - -X

MY PLAY CITY, INC.,
        Plaintiff-Counter-Defendant-
        Appellant-Cross-Appellee,

        -v.-                              13-2012-cv(L)
                                          13-2279-cv(XAP)

CONDUIT LIMITED,
        Defendant-Counter-Claimant-
        Appellee-Cross-Appellant.

- - - - - - - - - - - - - - - - - - -X

---

[*]Judge Lewis A. Kaplan, of the United States District Court for the Southern District of New York, sitting by designation.

**FOR APPELLANT:**     KEVIN R. GARDEN (<u>with</u> Leo V. Goldstein-Gureff <u>on the brief</u>), International Legal Counsels PC, Alexandria, Virginia.

**FOR APPELLEE:**     ELI SCHULMAN (<u>with</u> Michael A. Charish <u>on the brief</u>), Schulman & Charish LLP, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (McMahon, <u>J.</u>).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court be **VACATED**.

My Play City, Inc. ("MPC") appeals, and Conduit Limited cross-appeals, from the judgment of the United States District Court for the Southern District of New York (McMahon, <u>J.</u>), awarding $500,001.00 to MPC after a bifurcated jury trial. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

The two technology companies contracted to create an online toolbar, provide it to end users, and share revenues from its use. Conduit is in the business of helping "publishers" to create their own toolbars, filled with features related to their businesses. End users install a toolbar, making it constantly visible and accessible on their internet browsers. When the end user performs a Google search on the toolbar and then clicks on a sponsored link, Google pays a portion of its sponsorship revenue to Conduit.

The 2008 Publisher Revenue-Share Agreement provided that MPC, an online video game company, would use Conduit's technology to create a toolbar displaying MPC's trademark and the two would share revenues generated by that toolbar. The toolbar was available for download both on MPC's website and on Conduit's website.

After Conduit terminated the agreement in 2009, the toolbars continued to generate revenue: end users continued to use the toolbars that had been downloaded pre-termination, and new users continued to download the

toolbars post-termination.  Several months after termination, Conduit made the MPC toolbars unavailable for download on the Conduit website and made the already-downloaded toolbars unusable.

MPC's complaint alleges (in relevant part) Conduit underpaid it for pre-termination downloads and infringed MPC's trademark post-termination by continued use of the toolbar.  On summary judgment motions, the district court: ruled that a contractual limitation of liability applied to Conduit's pre-termination conduct; dismissed with prejudice two of MPC's claims; and granted summary judgment in favor of MPC on four of its claims alleging post-termination trademark infringement.  The district court then ordered a bifurcated jury trial, phase-one to determine whether the contractual limitation of liability applied to Conduit's post-termination conduct, and phase-two to determine damages.

The jury found that the limitation of liability did not apply to Conduit's post-termination conduct.  It awarded zero compensatory damages, one dollar nominal damages, and $500,000 for unjust enrichment.

The Court reviews de novo the district court's grant of summary judgment.  See El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010).  We also review de novo "both the district court's determination of whether a contract is ambiguous, and, as to an unambiguous contract, the district court's interpretation of its terms."  Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp., 595 F.3d 458, 468 (2d Cir. 2010) (internal citations omitted).

**1.**  As to damages for trademark infringement, the jury instructions are not challenged on appeal, so we apply them without ruling on their soundness.

Conduit advances two arguments why the district court should have granted its motions for judgment as a matter of law or, alternatively, for a new trial.

First, Conduit argues that MPC did not meet its burden because it failed to differentiate among Conduit's gross receipts, thereby failing to prove to the jury an amount of damages specifically attributable to infringement.  Second, Conduit asserts that the jury was required to credit Conduit's evidence regarding the distribution of downloads

3

and was further required to infer that the same evidence decreased MPC's damages.  Neither argument is availing.

Conduit's first contention is that "MPC bore the burden of proving gross profits attributable to infringing uses of its mark" but "instead presented the jury with an undifferentiated profits figure."  (Appellee's Br. at 12.)  The premise of that argument--<u>i.e.</u>, that it is MPC's onus to differentiate those profits attributable to infringement from those profits not attributable to infringement--is untenable in light of the jury instructions.  The Court therefore must reject this argument.

In the alternative, Conduit contends that it proved to the jury that only a small minority of the profits in evidence were attributable to uses that the district court held to have infringed MPC's mark: the distribution of toolbars on the Conduit website after termination of the contract.  Although Conduit did present evidence that only 2.9% of post-termination downloads occurred on its website (the vast majority having occurred on the MPC website), the jury was not compelled to accept that testimony in calculating damages for unjust enrichment.  These sorts of "[c]redibility determinations, [] weighing of the evidence, and [] drawing of legitimate inferences from the facts are jury functions, not those of a judge."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986); <u>see, e.g.</u>, <u>Raedle v. Credit Agricole Indosuez</u>, 670 F.3d 411, 418 (2d Cir. 2012).

**2.**  As to the contractual limit of liability, New York law enforces such a clause because it "represents the parties' Agreement on the allocation of the risk of economic loss in the event that the contemplated transaction is not fully executed, which the courts should honor."  <u>Metro. Life Ins. Co. v. Noble Lowndes Int'l</u>, 643 N.E.2d 504, 507 (N.Y. 1994).  Such a provision becomes unenforceable "when, in contravention of acceptable notions of morality, the misconduct for which it would grant immunity smacks of intentional wrongdoing."  <u>Kalisch-Jarcho, Inc. v. City of N.Y.</u>, 448 N.E.2d 413, 416 (N.Y. 1983).

When interpreting such a provision, as when interpreting any contractual language, "[w]ords and phrases are given their plain meaning."  <u>PaineWebber Inc. v. Bybyk</u>, 81 F.3d 1193, 1199 (2d Cir. 1996) (quotation marks omitted) (alteration in original).  "Under New York law, therefore, a court must enforce that plain meaning."  <u>Krumme v. WestPoint</u>

4

*Stevens Inc.*, 238 F.3d 133, 139 (2d Cir. 2000) (citing *Am. Express Bank Ltd. v. Uniroyal*, 562 N.Y.S.2d 613, 614 (App. Div. 1990)).

The Publisher Revenue-Share Agreement incorporated the terms of a separate Publisher Agreement, which includes the following limitation of liability:

> IN NO EVENT SHALL CONDUIT'S . . . LIABILITY FOR ANY CLAIM ARISING OUT OF OR RELATED TO THIS AGREEMENT, THE USE OF OR INABILITY TO USE THE TOOLBAR AND/OR ENVIRONMENT, TO THE FULLEST EXTENT POSSIBLE UNDER APPLICABLE LAW, EXCEED $5,000.

(Publisher Agreement ¶ X.)

The district court ruled that the clause applied to MPC's pre-termination claims but was ambiguous as to whether it applied to Conduit's post-termination infringement. The district court therefore submitted that question to the jury. On appeal, MPC challenges the limitation's applicability to the pre-termination claims and Conduit challenges the district court's decision to submit the post-termination applicability to a jury.

The limitation of liability extends to "any claims arising out of or related to this agreement." It therefore applies unambiguously to both the pre-termination and post-termination conduct that formed the basis for MPC's lawsuit.

MPC's pre-termination claims allege breach of contract, which manifestly arises out of and relates to the contract. MPC urges that the limitation is unenforceable as a consequence of Conduit's alleged manipulation of MPC's revenue share throughout its performance on the contract: in particular, a complex sequence of increases and decreases in MPC's revenue share and the conduct of a "screening" protocol that involved adjusting reports of searches from the toolbar. These allegations are exceedingly obscure and may even have led Conduit to pay more (not less) money to MPC. They therefore do not support a finding of "misconduct . . . smack[ing] of intentional wrongdoing." *See Kalisch-Jarcho, Inc.*, 448 N.E.2d at 416.

MPC's post-termination claims likewise relate to the agreement. As the district court explained,

5

"the gravamen of the infringing conduct was the defendant's continued use as though it were a licensee under this agreement following the termination of the agreement of the plaintiff's trademark." (Trial Tr. 393.) MPC's Second Amended Complaint, naturally enough, describes its trademark infringement claims by reference to the agreements. The infringing conduct was a continuation of the very conduct that Conduit undertook in performing the contract. Claims based on that conduct therefore relate to the agreements.[1]

Based on our de novo review of the limitation-of-liability clause, we conclude that it applies to the entirety of MPC's claims in this litigation. Conduit is liable for no more than $5,000 here.

**3.** Conduit argues that MPC's damages improperly encompass "extraterritorial infringement" of the trademark, because only 1.74% of post-termination toolbar use occurred inside the United States. Even if Conduit were to prevail on this argument, the resulting U.S.-only damages would exceed the $5,000 limitation of liability. We therefore need not reach this argument.

**4.** As to punitive damages, MPC sought to introduce evidence of Conduit's pre-termination breach of contract in order to demonstrate the egregious nature of its post-termination behavior. The district court, after an in camera review, excluded the evidence and declined to charge the jury with respect to punitive damages. The district court's sound ruling relied on State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408 (2003), which required that evidence of punitive damages bear a nexus to the harm suffered by the plaintiff. See id. at 420-23. For the reasons articulated by the district court, evidence of

---

[1]Although Conduit failed to conscientiously avoid infringement post-termination, the infringing conduct did not rise to the level of the egregious. To defeat the otherwise appropriate enforcement of the limitation-of-liability clause, the misconduct must be "in contravention of acceptable notions of morality," and "smack[] of intentional wrongdoing." Kalisch-Jarcho, Inc., 448 N.E.2d at 416. That is a tough standard, and Conduit's delay in taking down the toolbar (a delay that arguably benefited MPC's brand and website) did not rise to that level.

6

punitive damages was properly excluded and a jury charge concerning punitive damages was properly omitted.

For the foregoing reasons, we hereby **VACATE** the judgment and **REMAND** for entry of a judgment consistent with this order.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK