Electron Trading, LLC v Morgan Stanley & Co. LLC (2018 NY Slip Op 00380)





Electron Trading, LLC v Morgan Stanley & Co. LLC


2018 NY Slip Op 00380


Decided on January 23, 2018


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 23, 2018

Acosta, P.J., Manzanet-Daniels, Gische, Kapnick, Kahn, JJ.


4858 651370/15

[*1]Electron Trading, LLC, Plaintiff-Appellant,
v
Morgan Stanley & Co. LLC, Defendant-Respondent.


Mandell Bhandari LLP, New York (Evan Mandel of counsel), for appellant.
Milbank, Tweed, Hadley & McCloy LLP, New York (Scott A. Edelman of counsel), for respondent.



Order, Supreme Court, New York County (Saliann Scarpulla, J.), entered May 24, 2017, which, insofar as appealed from as limited by the briefs, granted defendant's motion to dismiss the fraud and negligent misrepresentation claims and the breach of contract claim to the extent it seeks damages above the amount allowed under the contractual limitation of liability clause, and to strike plaintiff's jury demand, unanimously affirmed, without costs.
Plaintiff, a developer of intellectual property relating to "spread" trading, a type of electronic securities trading, entered into two agreements with defendant: an Exclusive License Agreement (ELA) whereby it granted defendant an exclusive license for its alternative trading system (ATS) and a Consulting Services Agreement (CSA) whereby it agreed to perform related consulting services. The ELA required defendant to use commercially reasonable efforts to develop and implement necessary software and systems, to operate and market the ATS, and to launch the ATS by a defined deadline. Defendant concedes, for purposes of this motion, that it breached the ELA by not performing any of its obligations. The contested issue at the heart of this appeal is whether plaintiff's damages are limited by the ELA's limitation of liability provision. Defendant is willing to make full payment of any damages that would be due under the limitation of liability provision. Plaintiff contends, however, that it sufficiently alleged intentional wrongdoing on defendant's part to render the limitation of liability provision unenforceable.
The complaint alleges that plaintiff designed the ATS to be operated through a "dark pool," a private exchange where investors can make trades anonymously. It further alleges that institutional investors would use the product only if assured of total anonymity, because technologically advanced high frequency traders (HFT) could exploit the leakage of information from dark pools to execute transactions nanoseconds ahead of investors' trades and thereby siphon off the investors' anticipated profits. Plaintiff alleges that it contracted with defendant because of defendant's public statements about its scrupulous maintenance of the anonymity of dark pools and its focus on eliminating pre-trade information leakage — priorities that defendant allegedly reiterated during the negotiations leading up to the ELA and the CSA. Neither the ELA nor the CSA refer to HFTs or dark pools, or otherwise expressly contain these representations. Plaintiff claims that not only did defendant fail to perform its obligations under the ELA, but it also told plaintiff that it would perform only if plaintiff either allowed defendant's HFTs to "feast" on spread traders using the ATS or modified the ATS so that HFTs could "prey on" other customers. Plaintiff claims that defendant stood to earn hundreds of millions of dollars by catering to HFTs.
The limitation of liability provision in the ELA provides, in pertinent part, that "neither party's total liability under this agreement will exceed the total amounts previously paid by [defendant] to [plaintiff] under this agreement and the [CSA] prior to the date of the applicable claim." The CSA contains a similar provision. The ELA provides that "[t]he parties [*2]acknowledge that these limitations of liability and exclusions of potential damages were an essential element in setting consideration under this agreement" (all caps deleted).
It was not error for Supreme Court to rule on the enforceabilty of the liability limitation provision, although it is an affirmative defense, on a motion to dismiss. In the ordinary course of deciding motions, courts consider whether documentary evidence establishes an asserted defense, in this case a defense concerning the limitation of liability provisions in the parties' contracts (see e.g. Zanett Lombadier, Ltd v Maslow, 29 AD3d 495 [1st Dept 2006]).
New York courts routinely enforce such liability-limitation provisions, especially when negotiated by sophisticated parties. The Court of Appeals has recognized that
"[a] limitation on liability provision
. . . represents the parties' Agreement on the allocation of the risk of economic loss in the event that the contemplated transaction is not fully executed, which the courts should honor.
* * *
[The parties] may later regret their assumption of the risks of non-performance in this manner, but the courts let them lie on the bed they made"(Metropolitan Life Ins. Co. v Noble Lowndes Intl., 84 NY2d 430, 436 [1994]).
However, such clauses are unenforceable when,
"[i]n contravention of acceptable notions of morality, the misconduct for which it would grant immunity smacks of intentional wrongdoing. This can be explicit, as when it is fraudulent, malicious or prompted by the sinister intention of one acting in bad faith. Or, when, as in gross negligence, it betokens a reckless indifference to the rights of others, it may be implicit" (Kalish-Jarcho, Inc. v City of New York, 58 NY2d 377, 384-85 [1983]; see Abacus Fed. Sav. Bank v ADT Sec. Servs., Inc., 18 NY3d 675, 683 [2012]).
The "type of intentional wrongdoing that could render a limitation in [a contract] unenforceable is that which is unrelated to any legitimate economic self-interest'" (Devash LLC v German Am. Capital Corp., 104 AD3d 71, 77 [1st Dept 2013], lv denied 21 NY3d 863 [2013]; Meridian Capital Partners, Inc. v Fifth Ave. 58/59 Acquisition Co. LP, 60 AD3d 434 [1st Dept 2009]). Stated otherwise, a party can intentionally breach a contract to advance a "legitimate economic self-interest" and still rely on the contractual limitation provision (Devash, 104 AD3d at 77).
Plaintiff contends that defendant's insistence that it allow the ATS to be used for the benefit of HFTs impermissibly exceeded the contemplated scope of the ELA and CSA. However, the ELA gave defendant discretion to modify the ATS, and neither agreement refers to "dark pools" or protection from predatory HFTs. Thus, in demanding that plaintiff permit use of the ATS by HFTs, defendant was not seeking any benefit that was in conflict with what it was entitled to under the agreement (see Banc of Am. Sec. LLC v Solow Bldg. Co. II, L.L.C., 47 AD3d 239, 243 [1st Dept 2007], appeal withdrawn 16 NY3d 796 [2011]).
Plaintiff's broad allegations that defendant insisted that plaintiff undertake acts constituting securities fraud as a precondition to defendant's performance under the parties' contracts does not meet the heightened pleading requirements for fraud (see CPLR 3016[b]; SNS Bank v Citibank, 7 AD3d 352, 355 [1st Dept 2004]). Although the allegations globally raise issues that have recently come under legal scrutiny about how HFTs operate within dark pools (see e.g., People v Barclays Capital Inc., 47 Misc 3d 862 [Sup Ct, NY County 2015]; see also Waggoner v Barclays PLC, ( __ F3d __, 2017 WL 5077355, 2017 US App Lexis [2d Cir 2017]), [*3]the complaint is devoid of specific factual instances of fraud by defendant [FN1]. Plaintiff also fails to provide any explanation of how defendant's alleged acts actually violate the securities laws. Without more, the factual allegations in the complaint are insufficient to avoid the liability-limitation provisions in the parties' agreements. At most, the allegations support a claim of intentional breach, which is insufficient to void the limitation of liability provision (see Metropolitan Life, supra; Devash, supra).
Supreme Court correctly ruled that the jury waiver in the CSA is applicable to the breach of the ELA claim, given its express applicability to "related documents" (see e.g. Franklin Natl. Bank of Long Is. v Capobianco, 25 AD2d 445 [2d Dept 1966]; see also Bank of China, New York Branch v N.B.M., LLC, 2002 WL 1072235, 2002 US Dist LEXIS 9468 [SD NY May 28, 2002]).
The fraud and negligent misrepresentation claims fail to allege "actual pecuniary loss sustained as the direct result of the wrong" (see Lama Holding Co. v Smith Barney, 88 NY2d 413, 421 [1996] [internal quotation marks omitted]; Serino v Lipper, 123 AD3d 34, 42 [1st Dept 2014]). Moreover, even if the alleged loss in the ATS's value could be construed as the requisite out-of-pocket loss, plaintiff's alleged damages are inherently speculative; a factfinder would have to engage in conjecture (see Connaughton v Chipotle Mexican Grill, Inc., 135 AD3d 535, 538 [1st Dept 2016], affd 29 NY3d 137 [2017]; Rather v CBS Corp., 68 AD3d 49, 58 [1st Dept 2009] ["loss of an alternative contractual bargain . . . was undeterminable and speculative'"] [internal quotation marks omitted]). The complaint fails to allege facts showing that the ATS actually lost value. It does not allege that plaintiff was defrauded into relinquishing to defendant the ATS for value less than its worth; nor does it allege subsequent developments that would show that plaintiff can no longer license the ATS at the price it could command when it executed the ELA and the CSA.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JANUARY 23, 2018
CLERK



Footnotes

Footnote 1: In Waggoner, the plaintiffs relied on specific examples of public statements made by the defendant regarding the steps taken to protect its investors from HFTs.