Intrepid Invs., LLC v Selling Source, LLC (2018 NY Slip Op 06987)





Intrepid Invs., LLC v Selling Source, LLC


2018 NY Slip Op 06987


Decided on October 18, 2018


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 18, 2018

Richter, J.P., Manzanet-Daniels, Kapnick, Kern, Moulton, JJ.


7391 654291/13

[*1]Intrepid Investments, LLC, etc., Plaintiff-Respondent-Appellant,
v
Selling Source, LLC, et al., Defendants, White Oak Global Advisors, LLC, Defendant-Appellant-Respondent.


Schlam Stone & Dolan LLP, New York (Niall D. O'Murchadha of counsel), for appellant-respondent.
Tseitlin & Glas, P.C., New York (Eduardo J. Glas of counsel) and McCarter & English, LLP, New York (Clement J. Farley of counsel), for respondent-appellant.



Order, Supreme Court, New York County (Eileen Bransten, J.), entered July 1, 2015, which denied defendant White Oak Global Advisors, LLC's motion to dismiss the complaint as against it, and granted plaintiff's motion to amend the complaint to add claims for breach of the intercreditor agreement and tortious interference with contract as against White Oak, unanimously modified, on the law, to deny plaintiff's motion as to claims for breach of the intercreditor agreement based upon alteration of the maturity date of plaintiff's note, and to dismiss any claim or defense based on allegations that the First Priority or Second Priority Obligations have been paid in full or paid off, and otherwise affirmed, without costs.
The court correctly rejected plaintiff's argument that the remedies standstill provision of section 5(a) of the parties' intercreditor agreement (ICA) bars actions by Third Priority Lenders but not by the Third Priority Representative, because the Third Priority Representative's authority derives solely from the Third Priority Lenders (see American States Ins. Co. v Huff, 119 AD3d 478, 479 [1st Dept 2014]). Plaintiff's reading of the provision would impermissibly render the limitation on remedies meaningless (see Matter of Trump [Refco Props.], 194 AD2d 70, 75 [1st Dept 1993], lv denied 83 NY2d 754 [1994]).
The court correctly found that the exception to the standstill provision in section 5(b)(ii) is inapplicable, because this is not an action to protect collateral; even the causes of action related to collateral simply seek compensatory damages. The court correctly found section 5(b)(iv) inapplicable, because the phrase "to prevent the running of any applicable statute of limitations" in that section means to prevent the statute of limitations from expiring; this action was brought within a year of the alleged breaches.
Nor is there a conflict between section 5(a) and section 16 ("Governing Law; Forum"). The language upon which plaintiff relies indicates merely that the choice of a New York forum is not mandatory.
Defendant White Oak's documentary evidence demonstrates that the senior loans were merely refinanced, not "paid off," under its subsequent agreement with borrower defendant Selling Source, LLC (and its guarantor affiliates) (the White Oak Agreement [WOA]). In particular, the so-called "confirmation letter," a related agreement signed by all parties to the refinancing, expressly states that the disputed transaction is a replacement financing. Contrary to the court's ruling, the document is an agreement at arm's length, not merely a letter, and thus establishes conclusively that the loan was never "paid off" and that section 5(a) continued to apply to junior lenders, such as plaintiff (see Nanto MK Corp. v J & E Realty, 147 AD3d 695 [1st Dept 2017]; CPLR 3211[a][1]).
Thus, the remedies standstill provision of ICA section 5(a) bars this action unless White Oak is precluded from asserting it by having committed a material breach of the ICA.
The court correctly found that the complaint adequately alleges that White Oak breached the ICA by restricting payments from borrowers on plaintiff's junior note (the right to the payments is provided for in section 2[b]). The section of the WOA that plaintiff alleges bars these payments is ambiguous. Moreover, while ICA section 10 gives White Oak the right to amend its own loan documents, even to plaintiff's detriment, it appears to be in conflict with ICA section 14, which requires plaintiff's consent to amend the ICA. Nor can it be concluded as a matter of law that such a breach would be immaterial.
The court correctly sustained the claim that White Oak breached the ICA by removing plaintiff's lien on the assets of guarantor defendant Kitara Media, LCC. White Oak's right to remove that lien turns on whether the transaction with nonparty Ascend Acquisition Corp. was a "sale" or "disposition" of Kitara. Ascend's SEC filings suggest that it was a "reverse merger," rather than a sale, with Kitara the surviving entity and Selling Source, the borrower on White Oak's and plaintiff's notes, retaining over 50% of the stock of the surviving entity. This transaction is not necessarily a "sale" under the ICA (see e.g. New York Tile Wholesale Corp. v Thomas Fatato Realty Corp., 13 AD3d 425, 428 [2nd Dept 2004]).
The court correctly found that, in light of the exculpatory clause of section 10, the claim that White Oak breached the ICA by concealing the WOA from plaintiff is not viable. While intentional misconduct can be a basis for vitiating an exculpatory clause, where, as here, the conduct is merely intentional breach of contract, the clause will still be enforced (see Metropolitan Life Ins. Co. v Noble Lowndes Intl., 192 AD2d 83, 88 [1st Dept 1993], affd 84 NY2d 430 [1994]).
However, the court should have also dismissed the claim that White Oak breached the ICA by changing the maturity date of plaintiff's note. The provisions of the WOA do not require a change of maturity date of that note. By its terms the WOA gives borrowers three choices: pay off plaintiff's note early, renegotiate the note so it is due after the refinanced senior loans, or default on the senior loans. These are essentially the choices that borrowers had even without that term in the WOA.
In view of the foregoing, plaintiff's motion to amend must be denied as to the claim for breach of the ICA based on the delayed maturity date of plaintiff's note.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: OCTOBER 18, 2018
CLERK