■ BENJAMIN PELLOT, JR., Respondent, v JEANETTE PELLOT, Appellant. [759 NYS2d 494] —In an action for a divorce and ancillary relief, the defendant wife appeals from an order of the Supreme Court, Queens County (Dorsa, J.), dated March 18, 2002, which denied her motion for summary judgment on her third counterclaim for retroactive child support and on her fourth counterclaim for the monetary value of certain marital property, and granted the cross motion of the plaintiff husband for summary judgment dismissing those counterclaims.

Ordered that the order is modified, on the law, by (1) deleting the provision thereof denying that branch of the defendant's motion which was for summary judgment on her third counterclaim for retroactive child support and substituting therefor a provision granting that branch of the motion, and (2) deleting the provision thereof granting the cross motion and substituting therefor a provision denying the cross motion; as so modified, the order is affirmed, with costs to the appellant, and the matter is remitted to the Supreme Court, Queens County, for a determination of the amount of retroactive child support owed by the plaintiff in accordance herewith.

On May 16, 1996, the parties entered into a stipulation of settlement governing, among other matters, the payment of child support by the plaintiff and the distribution of two

automobiles. The stipulation required the plaintiff to pay $800 per month as child support for their two children. It is undisputed that the plaintiff paid the amount of child support set forth in the stipulation until June 1, 2000, at which time he unilaterally reduced his child support payments to $400 per month. The stipulation was never merged into any judgment or order.

In June 2000 the defendant sought an order of child support in the Family Court, Queens County. After an evidentiary hearing, the Family Court entered an order dated February 21, 2001, which decreased the plaintiff's child support obligation to $102.11 per week, and required him to pay retroactive child support in the total amount of $80.18. Thereafter, the plaintiff commenced the present action for a divorce and ancillary relief. The defendant moved for summary judgment on her counterclaims for retroactive child support and the value of a certain automobile, based upon the plaintiff's alleged breaches of the terms of the stipulation. The plaintiff cross-moved to dismiss those counterclaims. The Supreme Court denied the defendant's motion in its entirety, finding, in part, that the defendant's claim for retroactive child support was rendered academic by virtue of the Family Court's issuance of an order of child support after a hearing. The Supreme Court granted the plaintiff's cross motion, dismissing the wife's third and fourth counterclaims. We modify.

It is well-settled law that "[u]nlike an order of the Supreme Court, which can modify the provisions of a divorce judgment, a Family Court order can neither supersede the provisions of a surviving settlement agreement, nor divest the supported spouse of the right to sue on the contract in a plenary action to collect the difference between the amount provided for in the settlement agreement and the reduction directed by the court" (*Doty v Doty*, 262 AD2d 349, 350 [1999]; *see Sparacio v Sparacio*, 248 AD2d 705 [1998]). Since it is undisputed that the stipulation was never merged into any judgment or order, the Supreme Court erred in dismissing the wife's counterclaim for retroactive child support as academic.

Contrary to the plaintiff's contention that the stipulation's child support provisions are void and unenforceable because they do not contain the specific "opt-out" recitals mandated by the Child Support Standards Act (hereinafter the CSSA; *see* Domestic Relations Law § 240 [1-b] [h]), a review of the stipulation reveals that the parties clearly did not intend to "opt-out" of the CSSA guidelines but instead, intended to follow them. Indeed, the stipulation specifically states that "the

amount of child support provided for herein is the presumptive amount of the basic child support obligation determined pursuant to the guidelines of the Child Support Standards Act." Since the child support provisions of the stipulation cannot be interpreted as an "opt-out" of the CSSA guidelines by the parties, the stipulation was not required to contain the additional recitals regarding the amount of child support that would have been calculated under the CSSA and the parties' reasons for not utilizing this amount (see Domestic Relations Law § 240 [1-b] [h]). Moreover, the stipulation comports with the requirements of the statute, in that it contains a recitation that the parties were advised of the provisions of the CSSA, and that the basic child support obligation provided for therein would presumptively result in the correct amount of child support to be awarded. As such, the wife is entitled to enforce these provisions of the stipulation and to recover the difference between the amount of child support agreed to in the stipulation and the reduced amount set by the Family Court (see Doty v Doty, supra; Sparacio v Sparacio, supra).

However, despite the parties' clear intention to follow the CSSA guidelines in setting the amount of basic child support, the amount actually contained in the stipulation is incorrect and should be adjusted. When interpreting a contract, the court should arrive at a construction that will give fair meaning to all of the language employed by the parties to reach a practical interpretation of the expressions of the parties so that their reasonable expectations will be realized (see Gonzalez v Norrito, 256 AD2d 440 [1998]; Joseph v Creek & Pines, 217 AD2d 534 [1995]). Since there is no indication in the stipulation that the parties intended anything other than to compute the amount of basic child support in accordance with the CSSA guidelines, the amount of basic child support should be recalculated utilizing the husband's annual salary at the time the stipulation was entered into: May 16, 1996. The Family Court made a specific finding that the plaintiff's annual salary in May 1996 was $42,000 based upon the plaintiff's W-2 form and the couple's 1996 joint tax return, both of which, the court noted, were submitted into evidence by the defendant. Therefore, the amount of retroactive child support to be awarded to the defendant should be calculated based upon the difference between the amount the parties intended the stipulation to reflect, i.e. $786 per month (the amount calculated in accordance with the CSSA guidelines), and the amount ordered by the Family Court, $102.11 per week. In calculating the total amount of the award, the Supreme Court should take into account any amounts paid by the plaintiff in excess of the $786

per month, as well as the retroactive amount of $80.18 paid by the plaintiff pursuant to the Family Court order of support, as credits against the total amount awarded.

The defendant's fourth counterclaim is premised upon the plaintiff's alleged failure to transfer ownership of a particular automobile to her as allegedly required by the stipulation. However, we find the relevant provision of the stipulation to be ambiguous. It is well settled that whether or not a writing is ambiguous is a question of law to be resolved by the courts (*see W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 [1990]). Where the language of a contract is susceptible to varying but reasonable interpretations, the parties may submit extrinsic evidence as an aid in construction, and the resolution of the ambiguity is for the trier of fact (*see State of New York v Home Indem. Co.*, 66 NY2d 669, 671 [1985]). Given the ambiguity of the stipulation's automobile provisions and the conflicting interpretations which can be made, issues of fact exist which preclude the granting of summary judgment to either party on the defendant's fourth counterclaim. Santucci, J.P., Feuerstein, McGinity and Schmidt, JJ., concur.