*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0461p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

STEPHEN POPOVICH, also known as Cleveland
International Records, successor-in-interest to the
recording label Cleveland Entertainment Co., Inc.,
          *Plaintiff-Appellee/Cross-Appellant,*

  *v.*

SONY MUSIC ENTERTAINMENT, INC.,
          *Defendant-Appellant/Cross-Appellee.*

Nos. 06-3463/3464

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 02-00359—Solomon Oliver, Jr., District Judge.

Argued: September 13, 2007

Decided and Filed: November 21, 2007

Before: MARTIN, GUY, and CLAY, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Paul G. Gardephe, PATTERSON, BELKNAP, WEBB & TYLER, New York, New York, for Defendant. David Blakeslee Webster, WEBSTER & DUBYAK, CO., Cleveland, Ohio, for Plaintiff. **ON BRIEF:** Paul G. Gardephe, PATTERSON, BELKNAP, WEBB & TYLER, New York, New York, for Defendant. David Blakeslee Webster, WEBSTER & DUBYAK, CO., Cleveland, Ohio, for Plaintiff.

        MARTIN, J., delivered the opinion of the court, in which CLAY, J., joined. GUY, J. (pp. 13-16), delivered a separate dissenting opinion.

_____

## OPINION

_____

        BOYCE F. MARTIN, JR., Circuit Judge. A jury awarded Stephen Popovich over five million dollars on his claim that Sony Music Entertainment, Inc., breached its duty to affix Popovich's record company logo to four Meat Loaf albums. On appeal, Sony argues that the damages award was barred as a matter of law. Popovich cross-appeals claiming the district court improperly denied his motion for pre-judgment interest, improperly limited discovery to Sony's distribution of Meat Loaf albums in eight countries, and improperly held that Sony's logo obligations did not apply to internet downloads. For the following reasons we AFFIRM the jury's

1

verdict, the district court's denial of pre-judgment interest, and the exclusion of internet downloads from Sony's logo obligations. We reverse the district court's decision restricting discovery related to any new obligations created by the 1998 Agreement to the eight countries delineated in the original agreement, and remand for further proceedings.

I.

*A. Factual Background*

This case arises from an agreement entered into between the plaintiff Popovich and defendant Sony's predecessor-in-interest, CBS Records, almost 30 years ago. In 1977, CBS and Popovich's company, Cleveland Entertainment Company, entered into a production agreement granting CBS first refusal rights for any artists Popovich signed to Cleveland Entertainment. In return, CBS agreed to pay Cleveland Entertainment approximately $150,000 per year for operating expenses, and royalties related to recordings generated by any Cleveland Entertainment artists that CBS accepted.

Additionally, CBS also agreed to place the logo for Cleveland Entertainment's trade name, "Cleveland International Records," on "records comprised exclusively of an Artists' performances" released in the United States and eight other foreign countries. In the event CBS breached its obligation to place the logo on a record, the 1977 Agreement limited Popovich's remedies:

> no failure on the part of CBS to comply with its [logo] obligations pursuant to this paragraph 7.05 will constitute a material breach of this agreement; in such event, [CBS's] sole obligation to [Popovich] by reason of such failure shall be to rectify the error in all such materials prepared after its written receipt of written notice thereof from [Popovich].

In 1979, 1981, and 1984, CBS and Cleveland Entertainment renewed the 1977 agreement by entering into the same contract for 3 year periods each time. In addition to the logo obligation, these agreements also covered, among other things, royalty payment obligations between CBS and Cleveland Entertainment.

In August 1977, Popovich signed a promotional contract with recording artist Michael Lee Aday, known professionally as "Meat Loaf." Meat Loaf had recorded his first solo album – "Bat Out of Hell" – but no record label was willing to distribute the album. Popovich submitted "Bat Out of Hell" to CBS, which agreed to distribute it under its "Epic" label. "Bat Out of Hell" was released in 1977 and has since sold over 30 million copies worldwide. Between 1981 and 1984, CBS released three more Meat Loaf albums – "Dead Ringer," "Midnight at the Lost and Found," and "Hits Out of Hell," a compilation of greatest hits from Meat Loaf's first three albums. The parties do not dispute that these albums are covered by the 1977 Agreement.

In 1982, Popovich and his partners dissolved Cleveland Entertainment. Popovich retained the rights to use the Cleveland International Records tradename, logo, and recording label. Popovich created Popovich Ltd., and negotiated a new contract with CBS in 1982 with similar terms to the 1977 agreement. From 1986 to 1994, Popovich lived in Nashville, and for that time period, the Cleveland logo was not in use. When Popovich returned to Cleveland in 1994, he formed Popovich Music Group (PMG) and registered the name "Cleveland International Records" and the Cleveland logo to PMG.

On September 18, 1995, Cleveland Entertainment sued Sony for unpaid royalties due under the 1977 Agreement. The lawsuit did not allege any violations of the logo requirement contained in the 1977 Agreement. Ultimately, the lawsuit was settled, and on February 17, 1998, a Settlement Agreement was entered into by Sony and Cleveland Entertainment.

The 1998 Settlement Agreement required Sony to pay a substantial sum of money to Popovich in exchange for a full and complete release of past claims from Popovich and Cleveland Entertainment.  In addition, the parties negotiated a clause regarding Cleveland logo placement:

> Sony Music will continue to place the Cleveland logo (in the design currently used on the tape configuration of "Bat Out of Hell") on albums, CDs, cassettes, and all other forms and configurations of master recordings embodied on the albums entitled "Bat Out of Hell," "Dead Ringer," "Midnight at the Lost and Found," "Hits Out of Hell" and will add such logo to all forms and configurations on which it does not presently appear (including CDs) manufactured by Sony Music after September 1, 1998, provided, however, that Sony Music shall reasonably determine the size and location of such logo.

The parties also reaffirmed the 1977 Agreement, stating: "[e]xcept as otherwise provided in the [Settlement] Agreement, the parties expressly ratify and confirm in all respects the January 1977 Agreement and each and every provision thereof."

### B.  Procedural Background

On February 26, 2002, Popovich filed the instant action alleging reverse passing off under both state and federal statutes, rescission, breach of contract, and fraud.  The district court granted summary judgment to Sony on the reverse passing off, rescission and fraud claims.  Regarding the remaining breach of contract claims, Popovich alleged that Sony failed to comply with the 1998 Agreement's logo requirement.  He alleged three specific breaches: (1) Sony failed to place the Cleveland logo on some copies of the four Sony Meat Loaf Albums, (2) Sony failed to place the Cleveland logo on compilation albums containing songs from the Sony Meat Loaf Albums, as allegedly obligated to do by the 1998 Agreement, and (3) Sony failed to display the Cleveland logo when any songs from the Sony Meat Loaf Albums were purchased for internet streaming or downloading.

In its motion for summary judgment on Popovich's breach of contract claims, Sony argued that the 1998 Agreement merely ratified the 1977 Agreement, and unambiguously did not grant Popovich any logo placement rights on compilations nor did it obligate Sony to place a logo on any internet downloads or streams of Meat Loaf albums.  Sony recognized that it failed to place the logo on the copies of the four Meat Loaf albums in violation of the 1977 and 1998 agreements, but argued that the 1977 Agreement limited Popovich's remedy and precluded him from seeking damages resulting from Sony's breach.  The district court held that the 1998 Agreement was ambiguous regarding whether or not Sony's logo obligation was extended to compilations and whether or not Popovich's remedy was limited by the 1977 Agreement, and allowed those issues to go to the jury.  The district court granted summary judgment in Sony's favor regarding its logo obligations on internet downloads, finding that the 1998 Agreement unambiguously did not include internet downloads.

After trial, the jury returned a verdict holding Sony in breach of contract.  The jury awarded Popovich $5,057,916.00 in damages.  In response to a series of special interrogatories, the jury found by a preponderance of the evidence that:

1.  The 1998 Settlement Agreement obligates [Sony] to place the Cleveland International Records logo on compilation products consisting of at least one Meat Loaf master recording;

2.  The term "manufactured by Sony" in the 1998 Settlement Agreement does not limit Sony Music's obligations under the 1998 Settlement Agreement to only products actually manufactured by Sony Music; and

3.      The 1977 [Agreement] does not obligate [Sony] to place Cleveland International Records logo on CDs comprised exclusively of Meat Loaf master recordings.

The district court entered judgment against Sony on May 31, 2005.

Sony renewed its previous motion for Judgment as a Matter of Law, or in the alternative, a new trial. The district court denied Sony's motion on January 23, 2006. The district court denied Popovich's motion for pre-judgment interest, specific performance, and attorneys fees, but granted his motion for post-judgment interest.

Both parties have filed appeals. Sony argues that the 1977 and 1998 agreements were unambiguous with regard to Sony's logo obligations and Popovich's available remedy for Sony's breach of its logo obligations, and is thus entitled to judgment as a matter of law. According to Sony, the 1977 and 1998 agreements must be read as one agreement, and that when done, it is clear that Sony's logo obligations were not expanded by the 1998 agreement to cover compilations. Sony also argues that it is unambiguous that the remedy limitation contained in the 1977 Agreement also applied to Sony's logo obligations under the 1998 agreement and Popovich is thus not entitled to any damages. In the alternative, Sony argues that the damages theory Popovich pursued at trial is not allowed under New York law.

Popovich appeals the district court's finding that the 1998 Agreement unambiguously excluded internet downloads from Sony's logo obligation and unambiguously limited Sony's logo obligation to CDs released in the United States, Canada, the United Kingdom, France, Germany, Italy, Spain, Japan and Australia. Popovich also appeals the district court's denial of his motion for pre-judgment interest.

II.

*A. Was the district court correct in determining that the 1998 Settlement Agreement was ambiguous regarding whether the remedy limitation of the 1977 Agreement applied to Sony's breach of its logo obligation under the 1998 Settlement Agreement?*

Sony argues that the district court erred when it determined that it was ambiguous whether the remedy limitations clause contained in the 1977 Agreement applied to the logo obligation in the 1998 Agreement. According to Sony, the plain language of the remedy limitation clause contained in the 1977 Agreement unambiguously applies to the 1998 Agreement vis-a-vis the 1998 Agreement's ratification clause. That clause states that "[e]xcept as otherwise provided in the Agreement, the parties expressly ratify and confirm in all respects the January 1977 Agreement and each and every provision thereof." Sony reasons that this clause expressly preserved the remedy limitation of the 1977 Agreement. According to Sony, "[t]he obvious intent of the broad ratification clause was to maintain in place all provisions of the 1977 Agreement not specifically altered or modified, including the limitation of remedies clause." Appellant's Br., at 27.

The district court did not disagree with Sony's reasoning, it simply found that while the 1998 Agreement did ratify and confirm the 1977 Agreement, the remedy limitation clause by its own terms unambiguously applies only to the logo obligations contained in paragraph 7.05 of the 1977 Agreement. According to the district court, if the 1998 Agreement contained new logo obligations, such as for compilations, CDs, or internet downloads, the remedy limitation contained in paragraph 7.05 of the 1977 Agreement would not apply to those new obligations. Alternatively, if the 1998 Agreement did not create any new logo obligations, then the remedy limitation would apply to Popovich's claims as all of Sony's logo obligations would necessarily fall under paragraph 7.05 of the 1977 Agreement.

This Court reviews a district court's grant of summary judgment de novo. *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1176 (6th Cir.1996). Summary judgment is appropriate if, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Additionally, this Court must construe the facts and draw all inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 478 U.S. 574, 587-88 (1986).

Per the terms of both agreements, New York law governs. In a contract interpretation case, summary judgment is appropriate if the contractual terms are unambiguous and the court can make a ruling as a matter of law. *See, e.g., Hindes v. Weisz*, 303 A.D.2d 459, 460-61 (N.Y. App. Div. 2003). "If there is ambiguity in the terminology used, however, and determination of the intent of the parties depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence, then such determination is to be made by the jury." *Hartford Acc. & Indem. Co. v. Wesolowski*, 305 N.E.2d 907, 909 (N.Y. 1973) (internal citations omitted).

Just as the district court held, we also believe it is clear the limitation remedy applies to the logo obligations of the 1977 Agreement. The remedy limitation, however, is constricted to Sony's obligations under paragraph 7.05, and does not limit Popovich's remedies for breach of any other aspect of the 1977 Agreement: "no failure on the part of [Sony] to comply with its obligations pursuant to *this* paragraph 7.05 will constitute a material breach . . . ." (emphasis added).

Turning to the 1998 Agreement, we do not believe the district court erred in holding that it was ambiguous whether the remedy limitation applied to Sony's logo obligations under the new agreement. Sony argues that the 1998 Agreement's broad ratification of the 1977 Agreement —"[e]xcept as otherwise provided in the Agreement, the parties expressly ratify and confirm in all respects the January 1977 Agreement and each and every provision thereof" — expressly incorporates the limitation of remedies found in paragraph 7.05 of the 1977 Agreement into the 1998 Agreement. The district court found, however, that the limitation contained in 7.05 only applied to that paragraph by its own express terms, and the broad ratification of the 1977 Agreement did not expand the limitation, but rather reinforced its application to paragraph 7.05 only. We do not believe this was error.

The relevant question is whether the 1998 Agreement expanded Sony's logo obligation beyond its obligations under paragraph 7.05 of the 1977 Agreement. If there are no new obligations, then all of Sony's logo requirements fall under the limitation remedy of paragraph 7.05. However, if the 1998 Agreement created new logo obligations, the express terms of that agreement did not include a remedy limitation, nor did the parties expressly apply the remedy limitation of paragraph 7.05 to those new obligations. As the district court held, if Sony failed to meet any new obligations created by the 1998 Agreement, Popovich may "sue for breach of contract and seek the full range of relief afforded by contract law." We believe the district court was correct in this holding given the language of both agreements.

> *B. Was the district court correct in determining the 1998 Settlement Agreement was ambiguous regarding Sony's obligation to affix Popovich's logo to compilations and internet downloads, and whether the 1977 Agreement was ambiguous regarding Sony's obligation to affix the logo to CDs?*

The district court ruled on summary judgment that the 1998 Agreement was ambiguous with regard to Sony's obligation to place the Cleveland logo on compilations and internet downloads containing Meat Loaf songs and the 1977 Agreement was ambiguous as to Sony's logo obligation

on CDs.  Given the discussion above with regard to the remedy limitation, this ruling was very important as it left to the jury to decide whether the 1998 Agreement expanded Sony's logo obligation to compilations, downloads and CDs.  The jury ultimately determined that the 1977 Agreement did not obligate Sony to place logo's on CDs, the 1998 Agreement obligated Sony to place the logo on CDs and compilations, and the 1998 Agreement's logo obligation was not limited to only items "manufactured by" Sony.  These findings greatly increased Sony's potential liability for breach of the logo obligation under the 1998 Agreement.

### 1. CDs

Not surprisingly, with regard to CDs, Sony argues on appeal that the 1977 Agreement's logo obligation unambiguously applied to CDs, and the 1998 Agreement simply reinforced that obligation and did not create any new obligations.  Sony apparently took the opposite approach in its motion for summary judgment.  According to the district court, in a footnote in its summary judgment briefing, Sony stated "[t]he plain language of the 1977 Agreement strictly enumerated the product formats upon which the CIR Logo would appear – and did not make any provision for the subsequent emergence of the CD format."  Relying on Sony's statement and there being no opposition on this point from Popovich, the district court ruled that the 1977 Agreement logo obligation unambiguously did not apply to CDs.  Apparently Sony's trial strategy changed after the district court's summary judgment order found that the limitations remedy would not apply to new logo obligations under the 1998 Agreement.  Realizing its exposure had been greatly increased by the district court's ruling, Sony moved for reconsideration, arguing that the district court read too much into its footnote.  While the district court expressed its frustration with Sony for changing its stance, it did reverse its earlier ruling and found the 1977 Agreement was ambiguous with regard to whether the logo obligation applied to CDs.  Now Sony argues that the 1977 Agreement unambiguously applies to CDs and the 1998 Agreement did not expand any of the logo obligations of the earlier agreement.

The 1977 Agreement states that Cleveland's logo would be placed on "phonograph records." Paragraph 13.05 of that agreement defines "Records," "Phonograph Records," and "Recordings" as "all forms of reproductions, now or hereafter known."  According to Sony, the "now or hereafter known" language encompasses any advancements in physical media, such as CDs, that have been developed since 1977 to replace vinyl records and cassette tapes.  Sony further argues that the 1998 Agreement confirms this interpretation. Paragraph 5 of the 1998 Agreement states that "Sony Music *will continue* to place the Cleveland logo . . . on albums, CDs, cassettes, and all other forms and configuration of master recordings embodied on the albums . . . ." (emphasis added).

Popovich counters by arguing that the 1977 Agreement limits the logo obligation to the labels and jackets of "disc albums" and "tape albums."  The term "disc album" is not defined, and it was that term that led the district court to conclude that the agreement was ambiguous as to whether it covered CDs.

Once again, we do not believe the district court erred in its analysis.  Not only did Sony take the position in earlier briefing that the 1977 Agreement unambiguously did *not* cover CDs, but at the preliminary injunction hearing, Sony's own expert testified that he could not say "it's 100 percent given" that CD's were included.  Given the ambiguous language of the 1977 Agreement's logo obligation, Sony's previous stance that CDs were not covered, and the expert testimony stating it was not absolutely clear whether CDs were covered, we do not believe the district court erred in holding that the 1977 Agreement was ambiguous with regard to whether CDs were covered by paragraph 7.05's logo obligation.

## 2. Compilation Albums

As the district court accurately noted, "[t]he compilation dispute centers around whether the 1998 Agreement expanded Popovich's rights by requiring Sony to place the CIR logo on any Sony release containing at least one song from any Sony Meat Loaf Album. Neither party disputes that the language of the 1977 Agreement covers only albums comprised exclusively of Meat Loaf songs." The district court ultimately held that the 1998 Agreement was ambiguous as to whether it covered compilations, and allowed the jury to decide the issue. The jury found that the 1998 Agreement obligated Sony to place Cleveland's logo on compilations containing at least one Meat Loaf song.

Sony argues that because the 1998 Agreement does not expressly overrule the 1977 Agreement's exclusion of compilations, it is unambiguous that the 1998 Agreement does not cover compilations. This argument is not well taken.

The relevant language in the 1998 agreement states that Sony will place a logo "on albums, CDs, cassettes, and all other forms and configurations of master recordings embodied on the albums . . . ." The relevant terms are "all other forms and configurations" and "master recordings embodied on the albums." The district court found that the terms "forms" and "configurations" could include compilations or any other arrangement of the master recordings. The court realized these terms could also mean simply other types of physical formats such as CDs, cassettes, etc. The district court was also puzzled by the term "master recordings embodied on," finding it could be read to include any individual master recording from one of the albums or to albums comprised exclusively of Meat Loaf songs embodied on the Meat Loaf albums.

Also troubling is the use of the word "continue" in the 1998 Agreement: "Sony Music will continue to place the Cleveland logo on albums." Sony contends that the use of the word "continue" merely reaffirms its prior obligations under the 1977 Agreement. While the 1977 Agreement is clear — "phonograph records comprised exclusively of an Artist's performances recorded hereunder" — the 1998 Agreements language is much broader, yet incorporates the word "continue." Analyzing the language of the two agreements only led the district court to more questions than answers. The district court then analyzed extrinsic evidence in order to clear up the ambivalent language of the 1998 Agreement, but found that neither previous drafts of the 1998 Agreement nor both sides' experts' opinions cleared up the issue. Inevitably, the district court concluded the 1998 Agreement was ambiguous as to compilations.

We agree with the district court that the 1998 Agreement is ambiguous as to whether compilations are covered by the logo obligation. While it appears compilations are covered simply because the term "master recordings embodied on the albums" refers to individual songs on the albums, the use of the word "continue" raises the question of whether the parties were merely reaffirming the previous obligations of the 1977 Agreement. Given these obvious ambiguities, we believe the district court did not err in submitting this issue to the jury.

## 3. Internet Downloads

Popovich appeals the district court's decision on summary judgment finding that the 1998 Agreement unambiguously did not cover internet downloads. The district court held that the language "manufactured by Sony Music after September 1, 1998" precludes items not "manufactured" by Sony. In the words of the district court, "while Sony 'manufactures' albums, CDs, and cassettes, asserting that Sony 'manufactures' Internet downloads or streaming audio requires a liberal interpretation of 'manufacture.' Such an interpretation is simply too great a stretch for this court to conclude that there is ambiguity in the language."

Popovich contends that the "all forms and configurations" language was intended to cover future music formats such as internet downloads, and the "manufactured by Sony Music after September 1, 1998" language merely provides Sony a grace period to comply with its obligations.

The relevant question for this Court is whether the sentence "all forms and configurations . . . manufactured by Sony" includes internet downloads. Neither party has cited to, nor have we been able to find, a case holding that internet downloads may be "manufactured." As the district court noted, had the parties included the words "distributed by," the agreement would have lent itself to the interpretation that internet downloads were meant to be included in the logo obligation. As a result, we do not believe the district court erred in its holding that it is an unreasonable interpretation of the language of the agreement to conclude it covers internet downloads.

Popovich raises the doctrine of "new use" in his appeal. According to Popovich, New York courts have held that where one party wants contractual language governing a work's distribution to be broadly construed to govern use in a new medium, and the other party attempts to limit the application of the agreement, the burden of excluding the right to the new use will rest with the party attempting to limit the application, in his case, Sony. The Second Circuit applied the new-use doctrine in *Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.*, 145 F.3d 481, 486-87 (2d Cir. 1998). In doing so, the court stated that the words of the contract govern, and a court should not favor one party over the other. "If the contract is more reasonably read to convey one meaning, the party benefitted by that reading should be able to rely on it; the party seeking exception or deviation from the meaning reasonably conveyed by the words of the contract should bear the burden of negotiating for language that would express the limitation or deviation. This principle favors neither licensors nor licensees. It follows simply from the words of the contract." *Id.* at 487. The New York Court of Appeals affirmed the Second Circuit's reasoning in *Greenfield v. Philles Records, Inc.*, 780 N.E. 2d 166, 171-72 (N.Y. 2002). The New York court held that the reasonable interpretation of the contract governs. *Id.* at 172.

It is important to remember that the new-use doctrine has only been applied in the licensing arena and has not been applied to the factual situation in the present case. Regardless, taking into account the new-use doctrine's requirement that the language of the contract must be more reasonably read to include the new-use being proposed — here, internet downloads — the language "all forms and configurations . . . manufactured by Sony" is not more reasonably read to include internet downloads than to exclude internet downloads.

Based on the above, the district court's decision that the 1998 Agreement unambiguously does not include internet downloads should be affirmed.

*C.   Was the district court correct in allowing a "cost of completion" damages theory?*

Sony argues that the district court erred as a matter of law in allowing "cost of completion" damages to be argued at trial. According to Sony, New York does not allow such damages under the circumstances of this case. Sony is wrong.

In New York, the measure of damages in a breach of contract claim is typically the "value of the promised performance." *Schonfeld v. Hilliard*, 218 F.3d 164, 175 (2d Cir. 2000) (applying New York law). "When a defendant's breach of contract deprives a plaintiff of an asset, the courts look to compensate the plaintiff for the market value of the asset in contradistinction to any peculiar value the object in question may have had to the owner." *Id.* at 178 (internal quotation marks and citations omitted). As the Second Circuit noted in *Schonfeld*, if the asset has a readily identifiable market, it is much easier to determine the market value compared to an asset with no market. *Id.* However, "an asset does not lose its value simply because no such market exists." *Id.*

Where, as in this case, the asset is intangible — Popovich's right to have Sony affix his logo to Meat Loaf albums — New York courts have adopted the hypothetical market standard in order to determine the asset's value. *Id.* (citing *Nestle Holdings, Inc. v. Commissioner*, 152 F.3d 83, 88 (2d Cir. 1998) (trademark); *American Soc'y of Composers, Authors and Publishers v. Showtime/The Movie Channel, Inc.*, 912 F.2d 563, 569 (2d Cir.1990) (music license); *W.T. Grant Co. v. Srogi*, 52 420 N.E.2d 953 (N.Y. 1981)).  The Supreme Court defined the hypothetical market standard in *United States v. Cartwright*: "[t]he fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts."   411 U.S. 546, 551 (1973).  Accordingly, New York courts have allowed expert testimony on the hypothetical market value of an intangible asset, and evidence of sales data of comparable assets. *Schonfeld*, 218 F.3d at 178 (citing numerous New York cases).

The district court in this case properly allowed Popovich to pursue a damages theory consistent with the above law, namely, how much it would cost Popovich to obtain the logo rights elsewhere.

Sony also argues on appeal that Popovich's evidence on damages was insufficient and attacks Popovich's expert, Ronald DiMattia.  Sony argues that DiMattia was unqualified to testify as an expert, and his model of damages was inapplicable to the present case.   This court reviews a district court's decision concerning expert testimony for abuse of discretion. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152-53 (1999).

Prior to trial, the district court conducted an evidentiary hearing in order to determine whether the expert testimony offered by both parties was admissible under *Daubert*.  The district court ultimately allowed both DiMattia and Sony's expert, Jill Voigt, to testify about the market value of comparable intangible assets.  Without rehashing each finding of the district court, it is apparent the district court thoroughly examined DiMattia's credentials and experience, and concluded that despite having minimal experience in evaluating a contract or logo right, "DiMattia's extensive experience in business valuation, including valuation of business units and business assets, [was] sufficient to qualify him as an expert on the value of the contract right in this case."   This determination was not error.

DiMattia offered evidence on the market for custom CDs. Music companies sell custom CDs to corporate customers, which bear the corporation's name and logo and typically contain music selected by the corporation.  Voigt offered evidence on the value of license agreements for co-branded credit cards.  The district court found that both expert's testimony provided a comparable market and was a reasonable basis for the assessment of damages.  Again, the district court did not abuse its discretion in allowing both sides to present this expert testimony.

In evaluating the sufficiency of the evidence, we will not set aside a verdict "if there is any credible evidence to support [the] verdict." *Farber v. Massillon Bd. of Ed.*, 917 F.2d 1391, 1395 (6th Cir. 1990).  A review of DiMattia's testimony reveals evidence sufficient to support the jury's award.  DiMattia estimated damages at $3 per CD.  While there was some dispute as to the number of CDs without the logo, the high estimate would have resulted in damages over $30 million using DiMattia's per CD damages estimate. Voigt testified that damages would not exceed $105,000. The jury's award of $5.6 million was substantially below DiMattia's estimate and above Voigt's estimate. Under New York law, "[t]he assessment of damages is principally a factual determination to be made by the jury, and is accorded great deference unless it deviates materially from what would be considered reasonable compensation." *Johnson v. Grant*, 3 A.D.3d 720, 722 (N.Y. App. Div. 2004).  It cannot be said that the jury's determination deviated materially from the evidence presented at trial, and thus should not be disturbed.

*D. Does the geographic limitations clause of the 1977 Agreement unambiguously apply to the 1998 Settlement Agreement's logo obligation?*

The district court ruled during discovery that the geographic limitations clause contained in paragraph 7.05 of the 1977 Agreement applied to all of Sony's logo obligations under both the 1977 and 1998 Agreements. This ruling begs the question why the district court determined that one clause of paragraph 7.05 — the remedies limitation — does not apply to any new logo obligations under the 1998 Agreement, while another clause of paragraph 7.05 — the geographic limitation — applies to all logo obligations under the 1998 Agreement. More perplexing is what Popovich is seeking by appealing this issue. Nowhere does Popovich identify what relief he is seeking, and it would be an interesting strategic move to request a new trial after winning a $5.6 million jury verdict.

Nevertheless, we review the district court's decisions on discovery matters for an abuse of discretion. *Green v. Nevers*, 196 F.3d 627, 632 (6th Cir. 1999) ("Rulings concerning the scope of discovery are generally reviewed for abuse of discretion."). "An abuse of discretion occurs when the district court relies on clearly erroneous findings of fact, . . . improperly applies the law, . . . or . . . employs an erroneous legal standard. No error in the admission or exclusion of evidence is ground for reversal unless refusal to take such action appears to the Court to be inconsistent with substantial justice." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 296 (6th Cir. 2007) (internal citations and quotation marks omitted).

The question before us is whether the district court abused its discretion when it ruled that discovery would be limited to the sale of Meat Loaf albums in the countries delineated in the geography limitation clause of paragraph 7.05 of the 1977 Agreement. Reviewing the district court's early discovery decision in light of its later determination on summary judgment does reveal an inconsistency.

Paragraph 7.05 of the 1977 Agreement provides the following:

> CBS agrees that with respect to phonograph records comprised exclusively of an Artist's performances recorded hereunder and released during the term hereof, it will accord you a standard production credit in any full page trade advertisement relating solely to such records placed by CBS in the United States and on labels of disc albums and singles, and, to the extent that (i) space shall reasonably permit, and (ii) CBS shall afford such credit to the majority of CBS' associated labels, the labels of tape Albums, and on jackets of disc Albums in the United States, Canada, the United Kingdom, France, Germany, Italy, Spain, Japan and Australia, and such labels and jackets shall contain your distinctive trademark or logo, as such trademark or logo is approved by CBS (the "Mark"); provided however, that the size of such Mark and the particular area on such label or jacket or advertisement onto which CBS places such Mark shall be determined solely by CBS.

Popovich argues that this geographic limitation applies only to the logo obligations on labels of tape Albums and jackets of disc albums, but not the labels of disc albums and singles, which are delineated earlier in paragraph 7.05. He bases this argument on his reading of the 1982 Agreement, which he says simply rehashes the 1977 Agreement, but is more helpful because it breaks out paragraph 7.05 into subsections. We find this argument misleading, as paragraph 7.05 in the 1982 Agreement appears to substantively change the 1977 Agreement, and is not simply a carbon copy. Sony argues that not only is the 1977 Agreement controlling, it is unambiguous that geographic limitation applies to all of Sony's logo obligations.

Regardless whether paragraph 7.05 is unambiguous with regard to Sony's logo obligations under the 1977 Agreement, using the district court's reasoning on summary judgment, it is at least

ambiguous as to whether paragraph 7.05's geographic limitation applies to any new logo obligations contained in the 1998 Agreement. Accordingly, we reverse the district court's decision restricting discovery to the geographic limitation contained in the 1977 Agreement. On remand, we instruct the district court to determine the limited issue of whether the geographic limitation applied to new logo obligations created by the 1998 Agreement in light of its summary judgment rulings. This preserves the jury's verdict concerning Sony's obligation in the eight countries delineated in the geographic restriction, but allows Popovich to pursue damages for any possible breach by Sony outside of those eight countries.

### E.  Did the district court err in denying prejudgment interest to Popovich?

Popovich filed a post-trial motion seeking both pre-judgment and post-judgment interest at the New York statutory rate of nine percent. The district court denied any pre-judgment interest. Popovich appeals that ruling. Because the district court's decision denying Popovich's request for pre-judgment interest is a question of law, *see Grobe v. Kramer*, 33 N.Y.S.2d 901, 904 (N.Y. Sup. 1942), this court's review is *de novo*.

Prejudgment interest is recoverable as of right under New York's prejudgment interest statute, New York C.P.L.R. § 5001(a). *See Hilord Chem. Corp. v. Ricoh Elec., Inc.*, 875 F.2d 32, 39 (2d Cir. 1989). "However, New York law also provides that where there is a possibility that the jury award already allowed interest, no further prejudgment interest can be recovered on the verdict." *Trademark Research Corp. v. Maxwell Online, Inc.*, 995 F.2d 326, 342 (2d Cir. 1993) (citing *Men's World Outlet, Inc. v. Estate of Steinberg*, 101 A.D.2d 854, 855, (N.Y. App. Div. 1984) (reversing grant of statutory prejudgment interest because of possibility, raised by trial court's jury charge as to interest, that the jury already allowed interest).

The district court, in its order denying Popovich's post-trial motion for pre-judgment interest, reasoned that the jury award adequately compensated Popovich. This was based on the fact that the damages awarded were based on estimates of current, not historical, prices, and that the jury was instructed to place Popovich in as good a position as he would have been had Sony performed. To award Popovich over $3 million in interest on top of the over $5 million in damages would be a windfall and a penalty, according to the district court, "and would put [Popovich] in a better position than [he] would have been had the contract been fully performed."

Popovich argues that New York C.P.L.R. § 5001 is mandatory, and requires a court to award pre-judgment interest in a breach of contract case such as this. Popovich further posits that the cases relied on by the district court are outliers, and that the majority of New York courts have found section 5001 mandatory and automatically awarded pre-judgment interest.

The district court relied on *Kassis v. Teachers' Ins. and Annuity Assn.*, 13 A.D.3d 165, 165-66 (N.Y. App. Div. 2004), and *Bamira v. Greenberg*, 295 A.D.2d 206, 207 (N.Y. App. Div. 2002). Both of those decisions denied pre-judgment interest because both juries' damages awards were based on present value, rather than the value at the time of breach and the jury instructions were clear that the plaintiff should be made whole by putting him in the same position he would have been had defendant complied with his contractual obligations. Both decisions held that to award plaintiffs pre-judgment interest in these circumstances would constitute an unwarranted windfall.

We find the district court's decision persuasive. Had the estimates of damages at trial been calculated from the date of each of Sony's alleged breaches, pre-judgment interest from those dates would have been warranted. However, the estimates were based on present value estimates of damages, which presumably have risen with inflation over time. *See Bamira*, 295 A.D.2d at 207. To award additional interest on top of such an award would amount to a windfall to Popovich and a penalty to Sony. Additionally, instead of developing separate damage figures relative to various dates on which logos were omitted, Popovich completely combined the information in a way that

would make calculating pre-judgment interest impossible.  The district court's conclusion, based on the jury instructions, the testimony at trial, and the methodology of the damages experts, that Popovich was fully compensated, was not in error.

### III.

Based on the foregoing analysis, we affirm the jury's verdict and the district court's determinations on summary judgment and judgment as a matter of law.  We also affirm the district court's denial of Popovich's motion for pre-judgment interest.  We reverse the district court's limitation of discovery to the eight nations outlined in the 1977 agreement and remand for further proceedings consistent with this opinion.

---------------

**DISSENT**

---------------

RALPH B. GUY, JR., Circuit Judge, dissenting. I respectfully dissent. I would vacate the jury verdict and remand for entry of judgment in favor of Sony, because the original contract precluded Popovich from obtaining damages for Sony's partial failure to perform its promise regarding plaintiff's logo. As a result, there is no need to address the issues raised in Popovich's cross-appeal. Since the court's opinion sets forth the facts in some detail, they will not be repeated here.

**I.**

**A.     The Limitation of Remedies Clause**

The crux of this appeal is whether the limitation of remedies contained in paragraph 7.05 of the 1977 agreement precludes Popovich from recovering damages. The district court decided that the remedy limitation applied only to CBS's obligations under paragraph 7.05 of the 1977 agreement, and not to any new obligations created by the 1998 settlement agreement because the phrase "this paragraph 7.05" limited the clause to only obligations created by paragraph 7.05. Consequently, the district court allowed Popovich to pursue money damages for Sony's failure to comply with logo obligations required only by the 1998 settlement agreement. Sony argues that (1) the limitation on remedies applied to obligations arising out of both the 1977 agreement and the settlement agreement, or alternatively (2) no new obligations were created by the 1998 settlement agreement because the settlement agreement merely reconfirmed Sony's preexisting legal obligation regarding the CIR logo.

The parties raised this issue in motions for summary judgment and in motions for judgment as a matter of law. "In cases where an appellant made a Rule 56 motion for summary judgment that was denied, reiterated those same arguments in a Rule 50(a) motion at the close of evidence that was also denied, lost in front of a jury, and then renewed its arguments in a rejected Rule 50(b) motion after the entry of judgment, we will review only the denial of the Rule 50(b) motion." *Barnes v. City of Cincinnati*, 401 F.3d 729, 736 (6th Cir.), *cert. denied*, 126 S. Ct. 624 (2005). We review *de novo* a denied motion for a Rule 50 judgment as a matter of law. *Id.* "Judgment as a matter of law may only be granted if, when viewing the evidence in a light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party." *Id.*

The 1977 agreement and 1998 settlement agreement provide that they are to be interpreted according to the laws of the State of New York. The construction and interpretation of a contract is a question of law for the court. *W.W.W. Assocs. v. Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990). The court must determine if the contract is ambiguous. *Id.* If no ambiguity exists, the court must interpret the contract. *Pedersen v. Stockard S.S. Corp.*, 51 N.Y.S.2d 675 (App. Div. 1944). If an agreement sets forth the parties' intent clearly and unambiguously, the court may not consider extrinsic evidence to determine the parties' contractual obligations. *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002). The "reasonable expectation and purpose of the ordinary business[person] when making an ordinary business contract serve as the guideposts to determine intent." *Uribe v. Merchants Bank of N.Y.*, 693 N.E.2d 740, 743 (N.Y. 1998) (internal quotation marks and citations omitted). Moreover, the contract must be read as a whole, with every part interpreted to give effect to the contract's general purpose. *Westmoreland Coal Co. v. Entech, Inc.*, 794 N.E.2d 667, 670 (N.Y. 2003).

"When a term or clause is ambiguous, 'the parties may submit extrinsic evidence as an aid in construction, and the resolution of the ambiguity is for the trier of fact.'" *Geothermal Energy*

*Corp. v. Caithness Corp.*, 825 N.Y.S.2d 485, 489 (N.Y. App. Div. 2006) (quoting *Pellot v. Pellot*, 759 N.Y.S.2d 494, 497 (N.Y. App. Div. 2003)).

"Whether multiple writings should be construed as one agreement depends upon the intent of the parties." *Commander Oil Corp. v. Advance Food Serv. Equip.*, 991 F.2d 49, 52-53 (2d Cir. 1993). The intent of the parties is usually a question of fact reserved for the jury. *Rudman v. Cowles Commc'ns, Inc.*, 30 N.Y.2d 1, 13 (1972). "But if the documents in question reflect no ambiguity as to whether they should be read as a single contract, the question is a matter of law for the court." *TVT Records v. Island Def Jam Music Group*, 412 F.3d 82, 89 (2d Cir 2005), *cert. denied*, 126 S. Ct. 2968 (2006).

The settlement agreement specified that "[e]xcept as otherwise provided in [this settlement agreement], the parties expressly ratify and confirm in all respects the January 1977 Agreement and each and every provision thereof." It is true that the settlement agreement does not use the term "incorporate" to express its relationship with the 1977 Agreement and does not mention paragraph 7.05 specifically. Nevertheless, the terms "ratify" and "confirm," together with the broad language immediately following ("each and every provision"), leave no doubt in my mind that the parties intended for the settlement agreement and the 1977 agreement to be interpreted in conjunction with each other. I read the 1977 agreement as unchanged by the settlement agreement except where the settlement agreement expressly amends or modifies the 1977 agreement.

The conclusion that paragraph 5 of the settlement agreement must be read together with the 1977 agreement does not resolve the more difficult issue of whether paragraph 5 of the settlement agreement replaced, modified, expanded, or left untouched paragraph 7.05 of the 1977 agreement. The district court decided that the settlement agreement was ambiguous as to whether it added new logo obligations, such as placing the logo on CDs and on compilation albums.[1] To the extent that the settlement agreement did create new obligations, the district court decided that the limitation of remedy clause did not apply to those new obligations. Sony argues that the settlement agreement did not create new obligations, and even if it did, the limitation on remedies clause applies to the new obligations as well as the old.

I turn to the second argument first, because if Sony is correct, there is no need to decide the first issue. The district court reasoned:

> The court notes, however, that the remedy limitation unambiguously applies only to CBS' obligations under paragraph 7.05 of the 1977 Agreement, and not to obligations under other paragraphs of the 1977 Agreement or to new obligations under any future agreements. The text specifically covers failure to comply with "obligations pursuant to **this** paragraph 7.05." (1977 Agreement, ¶ 7.05.) (emphasis added). The presence of the word "this" emphasizes that the remedy limitation applies only to one specific paragraph of one specific agreement.

The district court also determined that it was required to conduct "an independent reading of the 1977 and 1998 Agreements to determine whether they are ambiguous as to remedy" and "the 1998 Logo Requirement does not contain any remedy-limiting language, nor does it reference the 1977 Agreement by name."

The district court did not interpret the two agreements together, as it should have done, when deciding whether the limitation of remedies clause applied to any new obligations created by the settlement agreement. The limitation of remedies clause is not mentioned in the settlement

---

[1]A compilation album is an album comprised of master recordings from more than one artist.

agreement, a strong indication that the parties intended for it to remain in effect.  I read paragraph 5 of the settlement agreement as modifying paragraph 7.05 of the 1977 agreement, either by clarifying Sony's existing obligations or by creating new obligations as to the type of product to which the logo obligation attached, but not replacing 7.05 in its entirety and not displacing the remedy limitation clause.

In reaching the opposite conclusion, the district court placed undo emphasis on the phrase "this paragraph."  Since paragraph 5 of the settlement agreement, at most, modified paragraph 7.05, paragraph 5's modifications could reasonably be viewed as having become a part of paragraph 7.05, and therefore "this paragraph" includes the obligations created in paragraph 7.05 as modified by paragraph 5 of the settlement agreement.  Moreover, paragraph 7.05 was the only paragraph in the agreement to address logo issues, so limiting damages for violations of "this paragraph" is  most reasonably interpreted as distinguishing the limited remedy available for breaches of logo-related obligations from breaches arising from other subject matters in the contract.

The settlement agreement demonstrates that Popovich knew how to utilize the opportunity created by the settlement agreement to change unfavorable terms of the 1977 agreement by doing so expressly.  Under the 1977 agreement, the agreement could not be changed or terminated "except by an instrument signed by an officer of CBS."  The settlement agreement expressly modified that provision by replacing the quoted language with "except by an instrument signed by both parties." The absence of any express language modifying the remedy limitation clause unambiguously indicates that the parties did not intend to create new remedies if Sony failed to correctly place the CIR logo on Meat Loaf products.

## B.      Equitable Arguments

Popovich contends that even if the limitation on remedies clause does apply generally, the court should not enforce the clause to prevent him from collecting damages because of (1) Sony's intentional conduct, (2) Sony's breach of the covenant of good faith and fair dealing, and (3) judicial estoppel.

### 1.       Intentional Conduct

Popovich contends that the limitation of remedies clause should apply only to inadvertent mistakes, not intentional conduct, based on the testimony of Gary Casson, who testified that the clause is boilerplate in the music industry to protect record companies from inadvertent mistakes. New York courts enforce limitation of liability clauses despite one party's argument that it should not be enforced because the breach was intentional.  *See Metro. Life Ins. Co. v. Noble Lowndes Intern., Inc.*, 643 N.E.2d 504, 507 (N.Y. 1994).  In *Metropolitan Life*, the New York court explained that a limitation on liability is an allocation of risk to which both parties agree, and courts should let the parties lie in the bed they made.  *Id.* (citing 5 Corbin, Contracts, § 1068, at 386).  Professor Corbin notes exceptions for contracts of adhesion and breaches that are also tortious—neither of which is the case here.  *Id.*  Even assuming there is case law to support this legal theory, it is not clear that any breach was intentional.

### 2.       Covenant of Good Faith and Fair Dealing

Popovich argues that the covenant of good faith and fair dealing prevents Sony from enforcing the limitation of remedy clause.  A covenant of good faith and fair dealing is implied in every contract under New York law.  *Dalton v. Educ. Testing Serv.*, 639 N.Y.S.2d 977, 979 (N.Y. 1995). Part of the duty of good faith is an obligation to perform in a timely manner.  *Steinman v. Olafson*, 149 N.Y.S.2d 31 (N.Y. App. Div. 1955).  As Popovich states in his own brief, however, a separate action may be brought for failure to comply with the separate obligation to render timely performance.  *Truglia v. KFC Corp.*, 692 F. Supp. 271, 276-77 (S.D.N.Y. 1988).  Popovich argues

that Sony's belated response to his complaints about the missing logo constitutes a breach of Sony's duty of good faith, but Popovich did not allege a breach on that ground.  Furthermore, Sony submitted evidence of its attempts to cure its breach of the logo requirement after Popovich's complaints, and Popovich has not conclusively shown that Sony intentionally failed to perform in a timely manner.

### 3.      Judicial Estoppel

Popovich argues that because Sony previously argued that money damages were available, it should now be estopped from arguing that damages are unavailable.  The doctrine of judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal quotation marks and citation omitted). We consider three factors before deciding if judicial estoppel applies.  First, a party's later position must be clearly inconsistent with its earlier position.  Second, the party must have succeeded in persuading a court to accept that party's earlier position.  Third, the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id.*

Popovich originally sought money damages for breaches that had occurred and an order of specific performance with regard to Sony's future obligations.  Popovich sought a temporary restraining order to force Sony to place the CIR logo on Meat Loaf songs distributed via the internet. The district court refused to issue the restraining order primarily because it concluded that Popovich was not likely to succeed on the merits of his claim that the logo obligation extended to internet releases.  The fact that damages were or were not available was not the district court's primary justification for denying the restraining order.  Furthermore, even if Sony took the position that damages were available, its position extended only to damages regarding the internet releases, not CDs, and the damages awarded by the jury related to CDs.

For these reasons, I would reverse the denial of judgment as a matter of law, vacate the jury's verdict, and remand for entry of judgment in favor of Sony.