■ PARKER & WAICHMAN, Respondent, v PAUL J. NAPOLI et al., Appellants. (And a Third-Party Action.) [806 NYS2d 19]—

Order, Supreme Court, New York County (Charles E. Ramos, J.), entered February 2, 2005, which, to the extent appealed from, denied defendants' motion to dismiss with respect to the claims asserted on behalf of clients referred by plaintiff and directed defendants to prepare a long accounting, unanimously reversed, on the law, without costs, and the motion granted. Appeal from order, same court and Justice, entered on or about

April 1, 2005, which granted plaintiff's motion to compel production for in camera review of unredacted settlement documents pertaining to nonreferred clients, unanimously dismissed as academic, without costs.

In the late 1990s, numerous personal injury actions were commenced throughout the country after the Food and Drug Administration recalled certain diet drugs, including Fenfluramine-Phentermine (Fen-Phen). Plaintiff law firm referred about 500 of these individuals to defendants. The actions were consolidated in federal court, but many opted out on defendants' advice and brought lawsuits in state court (the underlying settlement action).

Defendants successfully negotiated a global settlement with American Home Products Corp., the manufacturer and distributor of Fen-Phen. As part of the settlement process, defendants retained a law school legal ethics professor, who rendered an opinion that defendants had complied with their ethical obligation to provide sufficient information for their clients to make an informed decision regarding the offer.

The court appointed a special master to review the settlement offers for fairness and to mediate disputes, if necessary. The special master concluded that the settlement offers conformed with all ethical requirements and were reasonable and fair based on several criteria including the injuries sustained, causation, the plaintiffs' ages, duration of use, and special damages. The special master specifically concluded the offers "bore no relation to attorney referral."

Thereafter, by order dated November 7, 2001, the court (Helen E. Freedman, J.) confirmed the special master's report, and retained jurisdiction over any future matters involving the settlement. The court also issued a sealing order applicable to all of defendants' diet drug litigation cases in New York.

As a result of the settlement, plaintiff received approximately $5.3 million in referral fees pursuant to the fee-splitting agreements with defendants, which provided that plaintiff was entitled to between 40% and 50% of defendants' fees.

Two days after the court approved the settlement, plaintiff commenced the instant lawsuit alleging, inter alia, that defendants breached their contracts with plaintiff and with their referred clients. Plaintiff also sought an accounting.

As relevant to this appeal, the complaint asserts that defendants deliberately allocated more money to their direct clients than to plaintiff's referred clients so as to minimize the amount of legal fees owed to plaintiff. In addition, the pleading

alleges that defendants assessed millions of dollars in phony disbursements and expenses, thereby decreasing the net settlement amount and reducing plaintiff's referral fees. In May 2003, many of the referred clients and plaintiff commenced a virtually identical action against defendants. In January 2002, defendants moved to dismiss all but two causes of action set forth in plaintiff's complaint on the grounds of standing, collateral estoppel, documentary evidence and failure to state a cause of action.

In the meantime, plaintiff sought to intervene in the underlying settlement action in order to challenge the global settlement and sealing order. By order dated November 24, 2003, Justice Freedman denied the motion on the ground that plaintiff "has absolutely no connection with the [underlying] lawsuit whatsoever, inasmuch as it never claims that it referred this action to [defendants]." However, given plaintiff's allegations of fraud, the court unsealed those records concerning the settlement with defendants' clients on condition that confidentiality agreements be executed limiting dissemination of the information. This order was never appealed, and its validity is not at issue on this appeal.

By decision and order dated January 20, 2005, the court (Charles E. Ramos, J.), as relevant to this appeal, found that plaintiff had standing and denied that part of defendants' motion to dismiss the breach of contract and accounting claims.

Defendants appeal, and we reverse.

To the extent plaintiff's complaint alleges a cause of action for breach of contract between the referred clients and defendants, that claim should have been dismissed for failure to state a cause of action (*see Truty v Federal Bakers Supply Corp.*, 217 AD2d 951 [1995]). Plaintiff has not alleged that it is a third-party beneficiary to any contracts entered into between defendants and the referred clients. Indeed, the complaint is devoid of any reference to or description of any contracts between the referred clients and defendants. In the absence of such claim, only the parties to a contract have standing to sue for its breach (*see Artwear, Inc. v Hughes*, 202 AD2d 76 [1994]; *Crown Wisteria v F.G.F. Enters. Corp.*, 168 AD2d 238, 241-242 [1990]).

Even though plaintiff couches the remainder of its breach of contract claim as a challenge to its fee-splitting agreements with defendants, the real attack is to the underlying settlement and, more particularly, whether defendants engaged in any fraudulent conduct in assessing what criteria applied in ascertaining how much referred clients as opposed to direct clients were entitled to as a settlement. The fee agreements be-

tween the parties are only an incidental aspect of the overall global settlement agreement. The real issue is whether there was fraud behind the global settlement, a settlement which was agreed to by plaintiff's referred clients in the underlying action, approved by an ethics professor, overseen and approved by a special master, and ultimately confirmed by the Supreme Court.

Plaintiff's claim constitutes an improper collateral attack on a prior order (*see Rakosi v Perla Assoc.*, 3 AD3d 431 [2004]). "The remedy for fraud allegedly committed during the course of a legal proceeding must be exercised in that lawsuit by moving to vacate the civil judgment (CPLR 5015 [a] [3]), and not by another plenary action collaterally attacking that judgment" (*St. Clement v Londa*, 8 AD3d 89, 90 [2004], citing *Vinokur v Penny Lane Owners Corp.*, 269 AD2d 226 [2000]; *see also Crouse v Mc-Vickar* 207 NY 213 [1912]).

Accordingly, plaintiff's causes of action for breach of contract and an accounting should have been dismissed. The appeal from the order which granted plaintiff's motion to compel certain document production is dismissed. We need not reach defendants' remaining contentions in light of our determination. Concur—Buckley, P.J., Marlow, Ellerin and Williams, JJ.